STATE of Missouri, Respondent,

v.

Damiun WILLIAMS, Appellant.

No. WD 73550.

Missouri Court of Appeals, Western District.

Oct. 30, 2012.

Richard A. Starnes, Jefferson City, MO, for appellant.

Richard W. Johnson, Kansas City, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and ALOK AHUJA and MARK D. PFEIFFER, JJ.

ALOK AHUJA, Judge.

Damiun Williams [1] appeals the judgment of the Circuit Court of Jackson County convicting him of one count of possession of a controlled substance (phencyclidine or "PCP"). He argues that the trial court erred in denying his motion to suppress the PCP found in a warrantless search of the vehicle he was driving, because both the initial vehicle stop, and the subsequent vehicle search, were illegal. We conclude that the search of Williams' vehicle was unlawful, and reverse his conviction without addressing the legality of the traffic stop.

**Factual Background**

On March 26, 2009, Kansas City Police Officers Megan Laffoon and Andrew Henry stopped the vehicle Williams was driving for running a stop sign at the intersection of Benton Boulevard and 41st Street. After determining that Williams was driving with a suspended license, Officer Laffoon arrested and handcuffed him, and then conducted a search of the vehicle. As part of her search, Officer Laffoon lifted up the leather or leather-like boot or cover over the vehicle's gearshift lever, and discovered a lemon extract bottle containing a liquid PCP solution. She also found a package of cigarettes in the side compartment of the driver's side door. Officer Laffoon testified that PCP is frequently consumed by dipping a cigarette in a liquid containing the drug, and then smoking the PCP-impregnated cigarette.

Williams was charged with one count of possession of a controlled substance in violation of § 195.202, RSMo. Williams filed a motion to suppress the evidence seized during the vehicle search. After he waived his right to a jury trial, the circuit court heard his motion to suppress, and the trial of the underlying offense, together on November 12, 2010. The State put on two witnesses, Officer Laffoon and Detective Karen Jenkins. Officer Laffoon testified to the circumstances surrounding Williams' stop and arrest, and the vehicle search. She testified that, on learning that Williams was driving with a suspended license, she made the decision to arrest him and have his vehicle towed. Officer Laffoon testified that she conducted a search of the vehicle pursuant to the Kansas City Police Department's policy requiring the inventory of a vehicle's contents when it is being towed. Detective Jenkins testified as to her post-arrest interrogation of Williams, during which he admitted to smoking PCP earlier on the day of his arrest, and that PCP was his drug of choice. The State also introduced several exhibits, including a video recording of the stop taken by a dashboard camera in the police car, and the vehicle towing and inventory policy of the Kansas City Police

---

1. From the video recording of Williams' stop and arrest, it appears that the spelling of his first name may be "Daimiun," not "Damiun." Williams' first name is listed as "Damiun" in the trial court's judgment and in the records of this Court, however.

Department.[2] Williams did not present any evidence.

The circuit court denied William's motion to suppress, and found him guilty as charged. It sentenced him to five years' imprisonment, and recommended Williams' placement in the long-term substance abuse treatment program pursuant to § 217.362, RSMo. Williams appeals.

## Standard of Review

"At a hearing on a motion to suppress, 'the state bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled.'" *State v. Grayson*, 336 S.W.3d 138, 142 (Mo. banc 2011) (quoting *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992)). "The Court defers to the trial court's determination of credibility and factual findings, inquiring only 'whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous.'" *Id.* (quoting *State v. Goff*, 129 S.W.3d 857, 862 (Mo. banc 2004)). "By contrast, 'legal determinations of reasonable suspicion and probable cause' are reviewed *de novo.*" *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). "'[T]he facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded.'" *State v. Norfolk*, 366 S.W.3d 528, 531 (Mo. banc 2012) (citations omitted).

## Analysis

Williams challenges the legality of both the vehicle stop, and the subsequent search. Because we conclude that the search was unlawful, we need not separately address the legality of the stop.

The State sought to justify Officer Laffoon's warrantless search of the vehicle Williams was driving on the ground that it constituted an inventory search incident to towing the vehicle following Williams' arrest. We summarized the law concerning inventory searches in *State v. Ramires*, 152 S.W.3d 385 (Mo.App. W.D.2004), where we explained:

> The Fourth Amendment to the U.S. Constitution, enforceable against the states through the due process clause of the Fourteenth Amendment, guarantees the right of the people to be secure from unreasonable searches and seizures. This same right is guaranteed by article I, section 15 of the Missouri Constitution.[3] Pursuant to these constitutional guarantees, warrantless searches and seizures are deemed *per se* unreason-

2. Although the vehicle search in this case occurred on March 26, 2009, the Kansas City Police Department policy introduced into evidence is Procedural Instruction 09–9, "Towing/Protective Custody of Vehicles and Contents," issued and made effective on November 11, 2009. There was no evidence as to whether Procedural Instruction 09–9 was similar to, or different than, Procedural Instruction 06–4, which Procedural Instruction 09–9 rescinds and replaces. Nevertheless, no issue was raised in the trial court or on appeal concerning the relevance of Procedural Instruction 09–9, and we therefore join the parties in assuming that it accurately describes the Kansas City Police Department's vehicle inventory policy on the date of the search at issue in this case.

3. Williams' argument relies only on the Fourth Amendment to the United States Constitution; he does not rely on the similar provision of the Missouri Constitution. In any event, "Article 1, section 15 of the Missouri Constitution protects against unreasonable searches and seizures to the same extent as the Fourth Amendment." *State v. Johnson*, 354 S.W.3d 627, 630 (Mo. banc 2011). "Consequently, the same analysis applies under both provisions." *Grayson*, 336 S.W.3d at 143 n. 2.

able, subject only to a few specifically established and well-delineated exceptions. One such exception is an inventory search of a motor vehicle, which permits a law enforcement officer to make a warrantless search of a lawfully seized vehicle, provided that it is conducted according to standardized criteria or an established routine adopted by the law enforcement agency conducting the search. . . .

. . . Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment. In the case of a valid inventory search, the Fourth Amendment policies requiring a warrant or probable cause are not implicated. The purpose of the inventory search exception is threefold: (1) the protection of the vehicle owner's property, (2) the protection of the police from false claims of lost property, and (3) the protection of the police from potential danger. An inventory search is valid where reasonable police regulations for inventory procedures are administered in good faith. . . .

[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime.

*Id.* at 391, 402, 403 (citations and internal quotation marks omitted).

■■■ Adherence to established police department procedures is essential to the lawfulness of an inventory search. "[I]n order to ensure that the inventory search is 'limited in scope to the extent necessary to carry out the caretaking function,' it must be carried out in accordance with the standard procedures of the local police department." *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir.1989) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally 'remove the inference that the police have used inventory searches as "a purposeful and general means of discovering evidence of a crime." ' " *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir.2011) (citation omitted); *see also, e.g.,* *United States v. Maple*, 348 F.3d 260, 265 (D.C.Cir.2003) ("[T]he reasonableness of the officer's conduct is to be determined by reference to whether he followed the [local police department's] procedures."). "[The] decisions [of the Supreme Court] have always adhered to the requirement that inventories be conducted according to standardized criteria." *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

The Kansas City Police Department's inventory search policy, *see* note 2 above, provides the following definition of a "content inventory":

A content inventory is a detailed inventory and listing of items located inside of the vehicle being towed. It is required for the towing and protective custody of all vehicles. A content inventory permits locked and/or closed compartments (e.g., trunk or glove compartment) and containers to be opened either by key or by force to determine the content. Any contraband property of evidentiary value, or portable locked compartment that is not opened will be recovered and forwarded to the Property and Evidence Section.

In the event of an inventory search precipitated by an arrest, the policy provides:

A complete content inventory of the interior and trunk will be completed to prevent any article of valuable property from being overlooked.

(1) It is permissible to open closed containers when their contents cannot be determined from examining the container's exterior. If a container cannot be inventoried, it will be recovered and forwarded to the Property and Evidence Section.

The policy also sets forth the treatment of valuable property found in the vehicle:

D. Valuable property, other than firearms, which is attached to or part of the vehicle, e.g., radio/tape player, wire wheels, cellular telephone, etc., will be inventoried and listed on the Tow–In Report, Form 36 P.D., in the appropriate section. The officer will indicate on the Tow–In Report, Form 36 P.D., the disposition of all other property contained in the vehicle.

1. Valuable property in small quantities should be inventoried and forwarded to the Property and Evidence Section in accordance with the procedural instruction entitled, "Recovered Property Procedure." Property other than evidence and contraband may be released at the scene by the officer to a responsible person. Release information on the reverse side of the Physical Evidence/Property Inventory Report, Form 236 P.D., will be completed prior to releasing the property. The accompanying report will contain a narrative of the incident and will include the disposition of the property.

A summary of the action taken will be placed on the Tow–In Report, Form 36 P.D., in the space reserved for the officer's comments. This summary will include the type of report taken and the case report number.

The policy also provides that "[p]roperty of negligible value will be inventoried and listed on the Tow–In Report, Form 36 P.D."

Officer Laffoon breached the inventory policy in multiple ways; considered together, these circumstances lead us to conclude that the search conducted in this case was not a lawful inventory search.

■ First, we see nothing in the Kansas City Police Department's policy that authorized Officer Laffoon to search under the leather or leather-like gearshift boot. The State argues that the area underneath this cover was being used as a makeshift "compartment", because Officer' Laffoon testified that the boot was detached from the floor console or carpeting to which it should have been attached to form a sealed enclosure. Given the proximity of this space to the driver of the vehicle, the State argues that Officer Laffoon was entitled to search in this space to determine whether any property was being stored there.

As a general proposition, searches for, and searches of, hidden compartments are not justified under an inventory search policy like this one, which authorizes searches of "containers" and "compartments." *See, e.g. United States v. Kennedy*, 427 F.3d 1136, 1144 (8th Cir.2005) (finding search invalid because police failed to prove that area beneath loose audio speaker was either "personal property of value not permanently affixed" or "boxes, briefcases, and containers" under policy); *State v. Valenzuela*, No. 2 CA–CR 2010–0185, 2011 WL 1530062, at *3 (Ariz.App. April 19, 2011) (finding search invalid because prosecutors failed to prove that space underneath cup-holder was a "container" under policy). In *Opperman*, the United States Supreme Court held that a search of a vehicle's glove compartment was permissible, "since it is a customary

place for documents of ownership and registration, as well as a place for the temporary storage of valuables." 428 U.S. at 372, 96 S.Ct. 3092. *Opperman* "makes it fairly apparent that such inventories may not be extended to parts of the car which are not customarily used to store valuables." 3 Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 7.4(a), at 552 (3d ed.1996). A search of hidden compartments is generally not authorized because such explorations are not consistent with the rationale underlying the inventory-search doctrine. As one court has explained:

> With the right of police to impound an automobile a concomitant right to inventory its contents arises. The inventory must be reasonably related to its purpose which is the protection of the car owner from loss, and the police or other custodian from liability or unjust claim. It extends to the open areas of the vehicle, including such areas under seats, and other places where property

is ordinarily kept, e.g., glove compartments and trunks. It does not permit a search of hidden places, certainly not the removal of car parts in an effort to locate contraband or other property. *The owner having no legitimate claim for protection of property so hidden, the police could have no legitimate interest in seeking it out.*

*People v. Andrews,* 6 Cal.App.3d 428, 85 Cal.Rptr. 908, 914 (1970) (emphasis added), quoted in 3 LaFave § 7.4(a), at 552–53.[4]

Despite the general rule against searching hidden compartments as part of an inventory, a law enforcement officer may be entitled to search hidden compartments or other unconventional storage spaces *if* the circumstances in plain view during the conduct of a lawful inventory indicate the presence of the hidden compartment or potential storage space (for example, if carpeting or trim is overlapping or ill-fitting, indicating that it has previously been manipulated).[5]

**4.** See also, e.g., *United States v. Best,* 135 F.3d 1223, 1225 & n. 1 (8th Cir.1998) (after officer conducting inventory search noted that window did not lower properly, he shone flashlight into window slot of door, removed door panel, and discovered contraband; court held that removal of door panel was unjustified as part of inventory search, where "the door panel had no obvious damage"; "Best would not have a legitimate claim for protection of property hidden in the door panel and therefore Trooper Byrd did not have a legitimate interest in seeking such property.").

**5.** See, e.g., *United States v. Jackson,* 682 F.3d 448, 456 (6th Cir.2012) (officer "simply lifted the already loose flap of carpet that appeared to have been tampered with, based on his reasonable belief that it might be concealing a hiding place for items."), *cert. denied,* — U.S. ——, 133 S.Ct. 370, 184 L.Ed.2d 219, (2012); *United States v. Edwards,* 577 F.2d 883, 894 (5th Cir.1978) (en banc) ("officer could reasonably conclude that property may have been concealed beneath the carpet flap" where officer "noticed that two separate parts

of the carpet overlapped, concealing an area where property could be secreted," and "a short time earlier the officer had observed the defendant make a suspicious move toward the floor of the automobile"); *United States v. Colon,* No. 10 CR 498 (RPP), 2011 WL 569874, at * 15 (S.D.N.Y. Feb. 8, 2011) (concluding that inventory search would have inevitably led to discovery of evidence, since, "[u]pon scanning the glove compartment, [as explicitly authorized by police department's inventory policy,] the Officer would have observed the unusual-looking cloth hanging down from the glove compartment, and would have found the gun" in a hidden storage space connected to the glove compartment); *United States v. Fierros–Alavarez,* 547 F.Supp.2d 1206, 1208 (D.Kan.2008) (officer "performed an inventory search on the vehicle, and evidence of a hidden compartment behind the rear passenger seat was detected immediately"); *United States v. Rivera,* 465 F.Supp.2d 89, 109 (D.P.R.2006) ("while they were finishing the inventory of the vehicle, [police officers] were able to observe that in the seat in the back part there was something

Here, Officer Laffoon offered no testimony that the gearshift cover was noticeably askew before she moved it. Instead, she testified that the cover "had been loosened," and "wasn't connected to what it should be connected to." Officer Laffoon testified that *she* "lifted that up," revealing the bottle containing PCP "right there in plain view."[6] The State bore the burden of proving that the PCP was discovered as part of a lawful inventory search. On this record, the trial court was not in a position to find that the detachment of the gearshift boot was visible to Officer Laffoon before she attempted to raise it.

Officer Laffoon violated the Kansas City Police Department's inventory policy in other ways. Significantly, in addition to searching under the gearshift cover, she searched an additional area of the car not authorized under the policy: in the dashboard video, Officer Laffoon can clearly be seen using a key to open the flap on the vehicle's exterior which concealed the gas tank filler cap; she then used a second key to remove the gas tank filler cap itself, and felt inside the neck of the gas tank with her fingers. At oral argument, the State could offer no justification for Officer Laffoon's search inside the gas tank, effectively conceding that this aspect of Officer Laffoon's search violated the Kansas City Police Department's inventory policy. That policy authorizes only a "listing of items located *inside of the vehicle* being towed," and "a complete content inventory *of the interior and trunk*." The gas tank is not "inside of," or "the interior and trunk" of, a vehicle, nor is it a customary location for the storage of property. This aspect of Officer Laffoon's search plainly violated the inventory policy.

The circuit court dismissed any concerns over the search of the gas tank with this observation: "while the search of the inte-

---

that was not normal. There were some door hinges and the back seat was hard and rigid. The back seat would not move up or down; it was stuck there."); *United States v. Banks*, 150 F.Supp.2d 548, 551, 554 (S.D.N.Y.2001) (where New York City Police Department Patrol Guide "explicitly lists ... under the floor mats' as areas that could potentially contain valuables and thus must be searched" during inventory, officer acted lawfully where, after lifting floor mat, he discovered a clearly visible trap door to a secret compartment in which contraband was discovered); *Commonwealth v. Figueroa*, 412 Mass. 745, 592 N.E.2d 1309, 1312 (1992) (surreptitious storage area "was open to [police officers'] view as they were proceeding with a lawful inventory search of the interior of the vehicle").

Even where some evidence of tampering is present, the cases are not unanimous in holding that an inventory search includes makeshift storage compartments. *See United States v. Lugo*, 978 F.2d 631, 633, 637 (10th Cir.1992) (officer testified that vehicle's "door panel had been ajar, pulled away from the door, and there was a crease on the bottom rear corner of the door panel," leaving the panel "about a half an inch open"; court

nevertheless concluded that searching behind altered door panel exceeded scope of permissible inventory search, because "searching behind the door panel of a vehicle does not qualify as standard police procedure,' and does not serve the purpose of protecting the car and its contents' under any normal construction of those terms, at least on the evidence in this record." (footnote omitted)).

6. Under our standard of review, we presume that the circuit court credited Officer Laffoon's testimony that the bottle containing PCP was "in plain view" when she lifted the gearshift boot. However, on the recording from the police car's dashboard video camera, when Officer Henry questioned Officer Laffoon about the pervasive smell of the PCP-containing liquid, Officer Laffoon can be heard describing that she found the bottle "underneath the gearshift, and [when] I tried to put my hand in there, it felt like it spilled a little." Officer Laffoon made an underhanded gesture to illustrate how she "put [her] hand in there" while making this statement, suggesting that she may have reached under the gearshift cover and only felt the bottle, not seen it, when she discovered it.

rior of the gas tank may not have been an appropriate inventory search, the lemon extract bottle was not found in the gas tank, and therefore, no decision needs to be made on that issue." This statement reflects a misunderstanding of the law governing inventory searches. To rule on Williams' motion to suppress, the circuit court was required to decide the legality of the inventory search of the vehicle he was driving. The search under the gearshift cover and the search of the gas tank were parts of the same inventory search. To determine whether the PCP was discovered as part of a *bona fide* inventory of the vehicle, rather than during an investigative search for incriminating evidence, the trial court was required to consider the totality of the circumstances surrounding the search. *See, e.g., United States v. Taylor,* 636 F.3d 461, 464–65 (8th Cir.2011) (in determining constitutionality of inventory search, "the inquiry is whether, under the totality of the circumstances, the inventory search was reasonable") (citing *United*

*States v. Rowland,* 341 F.3d 774, 779 (8th Cir.2003)); *United States v. Frasher,* 632 F.3d 450, 454 (8th Cir.2011) (same).[7] Thus, contrary to the circuit court's order, we find Officer Laffoon's search of the interior of the gas tank of Williams' vehicle—a search for which the State can offer no justification—to be highly probative of the fact that this was an investigative, not an inventory, search.

In addition, Officer Laffoon failed to document the contents of the vehicle, and the disposition of those contents, as required by the police department's policy. As Officer Laffoon acknowledged, the policy specifies that "[p]**roperty of negligible value** will be inventoried and listed on the Tow–In Report, Form 36 P.D.," consistent with the overarching requirement of "a *detailed* inventory and *listing* of items located inside of the vehicle being towed," and a "*complete* inventory of the interior."[8] Yet on cross-examination, Officer

7. This is confirmed by prior decisions which have held purported inventory searches to be invalid based on police officers' conduct independent of their discovery of contraband. *See, e.g., Taylor,* 636 F.3d at 465 (finding inventory search unlawful because Kansas City police officer failed to provide any meaningful description of hundreds of valuable tools located in the vehicle, in violation of Kansas City Police Department's inventory policy; "the officer's description of misc. tools' [was] insufficient to remove the inference that the search was investigatory"); *United States v. Barraza–Maldonado,* No. 12–CR–0054 (PJS/SER), 2012 WL 2952312, at *8 (D.Minn. July 19, 2012) (inventory search unlawful where "Trooper Schneider admitted on cross-examination that he did not fill out an inventory form or take any notes regarding the contents of the vehicle, despite the fact that the purported justification for the search was to document' the contents of the car."); *United States v. Garcia–Medina,* No. 2:11–CR–545–TC, 2012 WL 3597765, at *4 (D.Utah Aug. 20, 2012) (inventory search which resulted in discovery of methamphetamine in suitcase in back compartment of sport utility ve-

hicle unlawful; court cites to fact that officer "was tapping on the center plastic console [in the front passenger area] looking for a hidden compartment," and "did not have a pen, did not write anything down, and appeared to be rummaging through the car"); *State v. Greenwald,* 109 Nev. 808, 858 P.2d 36, 38 n. 2 (1993) (contraband found in zippered toiletry bag in motorcycle saddlebag; noting that "[t]he fact that the officer told the trial court that he was looking in the gas tank and in every nook and cranny' of the motorcycle does have some bearing on the nature of the search."); *compare State v. Aderholdt,* 545 N.W.2d 559, 565 (Iowa 1996) (finding inventory search to be lawful; "Notably, the troopers did not abandon the inventory once marijuana was discovered and the defendants were arrested and transported to jail. They pursued the inventory to completion, citing the caretaking and liability concerns underlying the inventory exception to the warrant requirement.").

8. According to Officer Laffoon, "[y]ou're to notate all things of value within the car, even

Laffoon admitted that she and her partner had failed to list all property found inside the car, instead listing only items that they "both felt were important, of value." The recording from the dashboard videocamera reflects that a large number of items, including at least one box similar to a tool- or tackle-box, were located in the rear compartment of the sport-utility vehicle. However, because the State failed to admit the inventory report into evidence, so that the trial court or this Court could review it, we cannot determine how, if at all, these items were listed.

Although we do not have the inventory report itself, from Officer Laffoon's cross-examination we know that she also failed to document all of the *valuable* property found within the vehicle. According to Officer Laffoon's testimony, and as depicted in the video recording, two cell phones found in the vehicle were returned to Williams. The Kansas City Police Department inventory policy provides that "[p]roperty other than evidence and contraband may be released at the scene by the officer to a responsible person. Release information on the reverse side of the Physical Evidence/Property Inventory Report, Form 236 P.D., will be completed prior to releasing the property." Despite the explicit requirement to document the release of property to third parties, Officer Laffoon admitted on cross-examination that "no, it doesn't look like [the cell phones] ended up being listed on there."

We also note that the dashboard video recording makes clear that Officer Laffoon "did not have a pen, [and] did not write anything down" as she conducted her search. *United States v. Garcia–Medina,* No. 2:11–CR–545–TC, 2012 WL 3597765,

at *4 (D.Utah Aug. 20, 2012). Although Officer Laffoon told Officer Henry that she should be the only person physically searching the vehicle's interior, she did not complete the inventory form. According to Officer Laffoon, Officer Henry completed the form, "[m]ore than likely" based on what she told him. The video recording reflects that Officer Henry did not ask Officer Laffoon whether she had Tow–In reports in her patrol car until *fifteen minutes after the search had begun.* The fact that Officer Laffoon had no device to actually document the property she was uncovering, and that fifteen minutes elapsed before Officer Henry began the process of documenting whatever he listed, are additional factors indicating that this was not a true inventory.

Officer Laffoon's failure to completely and accurately document the property found in Williams' vehicle as required by the Kansas City Police Department inventory policy, and the behavior indicating that her objective was not to prepare an exhaustive property listing, are highly significant in determining whether this was a *bona fide* inventory search. "The policy or practice governing inventory searches should be *designed to produce an inventory.*" *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (emphasis added). The underlying purpose of an inventory search is (or at least *should be* ) to produce a report documenting the nature, and condition, of property being impounded, to protect the police department from spurious claims of lost or damaged property. Investigating officers' failure to properly record the property they find is a significant consideration in determining the *bona fides* of the inventory.[9]

---

things that aren't of value. I always put everything that's within the vehicle."

9. *See, e.g., Taylor,* 636 F.3d at 464–65 (finding an inventory search to be a ruse because the officer listed many valuable tools with the vague notation "misc. tools"); *Rowland,* 341

The circumstances surrounding the decision to tow Williams' vehicle—which created the justification for an inventory search—also indicate that this was not a true inventory. Officer Laffoon was asked on cross-examination whether, if Williams had asked to release the vehicle to its owner (his mother), she would have permitted him to attempt to contact her. Officer Laffoon responded in the affirmative, but testified that "I don't recall him ever asking me." After reviewing a portion of the videotape in which Williams asked Officer Henry if the car could be released to his mother, Officer Laffoon admitted that she "didn't give him an opportunity to ask that it be released to the owner" before she had made the decision to have the vehicle towed.[10]

In her testimony, Officer Laffoon claimed that she made the decision to tow the vehicle "[i]mmediately because he stated he wasn't the owner. From the beginning when he was placed under arrest." However, on the video recording of the incident, Officer Laffoon can clearly be seen indicating to her partner, Officer Henry, that a tow truck will be needed *six minutes after her search began.* Officer

Henry immediately called for a tow truck at that point. When Williams asked Officer Henry why they needed to tow the vehicle, Officer Henry responded, *"she found something."* The fact that a decision to tow the vehicle was made *only after incriminating evidence was found* is inconsistent with the State's claim that the search leading to the discovery of that evidence was an inventory.

Our holding that the inventory search of Williams' vehicle was pretextual is also supported by Officer Laffoon's testimony that, when conducting an inventory search, she searches "any places that items could have fallen" and, even more broadly, "anywhere items could be located." Although the dashboard video recording does not reveal what Officer Laffoon was doing inside the vehicle, it does show her running her hands over the interior door panels, apparently feeling for hidden objects or compartments. Her search—which was unencumbered by any notetaking activities—continued for almost twenty minutes. Officer Laffoon's expansive understanding of the nature of a permissible inventory search—which goes well beyond the terms

F.3d at 781 ("[L]aw enforcement's failure to record property does illustrate the inventory search was pretextual."); *United States v. Haro–Salcedo,* 107 F.3d 769, 773 (10th Cir. 1997) (finding purported inventory search unlawful where officer "explained that although he removed several items from the vehicle, he did not complete a written inventory form"); *United States v. Barraza–Maldonado,* No. 12–CR–0054 (PJS/SER), 2012 WL 2952312, at *8–*9 (D.Minn. July 19, 2012) (finding inventory search unlawful based primarily on officer's admission "that he did not fill out an inventory form or take any notes regarding the contents of the vehicle, despite the fact that the purported justification for the search was to document' the contents of the car" (citation omitted)); *United States v. Garcia–Medina,* No. 2:11–CR–545–TC, 2012 WL 3597765, at *6 (D.Utah August 20, 2012) (finding inventory search invalid based in part on the fact that "Trooper Sheets did not write

anything down" while conducting supposed inventory); *State v. Stauder,* 264 S.W.3d 360, 364 (Tex.App.2008) (affirming suppression of evidence; "[t]he trial court could have concluded that, based upon the officers' complete failure to fill out any inventory form as required, the inventory was merely a ruse to search Stauder's pickup").

10. We note that § 304.155.1(5), RSMo authorizes a law enforcement officer to arrange for the towing of "[a]ny abandoned property for which the person operating such property is arrested for an alleged offense for which the officer takes the person into custody *and where such person is unable to arrange for the property's timely removal."* (Emphasis added). Because neither party cites to this statute, we do not address its potential relevance here.

of the Kansas City Police Department's inventory policy—provides further indication that the inventory conducted in this case was just a ruse for an investigatory search seeking incriminating evidence. *See, e.g., Greenwald,* 858 P.2d at 38 n. 2 (affirming determination that inventory search was invalid in part because officer stated that he was looking in "every nook and cranny").

It is noteworthy that the search of Williams' vehicle occurred on March 26, 2009, twenty-six days before the United States Supreme Court's decision in *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Prior to *Gant,* the Supreme Court's decision in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), was "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant,* 556 U.S. at 341, 129 S.Ct. 1710. *Gant* rejected this widely-held understanding of *Belton,* however, and held instead that

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id.* at 351, 129 S.Ct. 1710.

Officer Laffoon testified that Williams was initially arrested only for driving with a suspended license, and he was hand- cuffed and kept at a distance from the vehicle while the search occurred. In these circumstances, the search could not be justified as a search incident to arrest under the *Gant* decision. The search could nevertheless arguably be consistent with the generally accepted, pre-*Gant* understanding of the scope of a police officer's authority to search a vehicle following the arrest of one of the vehicle's recent occupants. Following *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), the Missouri Supreme Court held in *State v. Johnson,* 354 S.W.3d 627 (Mo. banc 2011), that evidence discovered in a pre-*Gant* vehicle search like this one may be admissible, despite the fact that the search violates *Gant,* because officers conducting such pre-*Gant* searches acted "in objectively reasonable reliance' on [the] binding appellate precedent" in effect prior to *Gant. Id.* at 633. The State has not argued that this good-faith exception to the exclusionary rule should apply here, however. And any reliance on the good–faith exception recognized in *Davis* and *Johnson* would be foreclosed by Officer Laffoon's testimony that she was not conducting a search incident to Williams' arrest in reliance on the pre-*Gant* state of the law, but was instead inventorying the vehicle only because she had decided that it had to be towed and impounded. We will not affirm Williams' conviction based on a legal doctrine the State has never argued, and whose application would be inconsistent with the evidence.[11]

## Conclusion

The circuit court's denial of Williams' motion to suppress, and its judgment convicting him of possession of a controlled substance, are reversed. The evidence

---

11. We also note that the State has not argued, either in the trial court or on appeal, that Officer Laffoon's search was justified because she had probable cause to believe contraband or evidence of a crime was present in the vehicle.

discovered during the search of the vehicle Williams was driving should have been excluded at trial. While we may have doubts whether Williams' prosecution for possession of PCP can go forward without the excluded evidence, "[t]he erroneous admission of evidence does not preclude retrial because the state may produce other evidence that cures the evidentiary insufficiency." *State v. Granado*, 148 S.W.3d 309, 313 (Mo. banc 2004) (citation omitted). We therefore reverse Williams' conviction for possession of a controlled substance, and remand the case to the circuit court for further proceedings consistent with this opinion.

All concur.