

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | WD77869 |
| | ) | |
| v. | ) | OPINION FILED: May 5, 2015 |
| | ) | |
| KRAIG J. WALKER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Patricia S. Joyce, Judge

Before Division Three: Mark D. Pfeiffer, Presiding Judge, Gary D. Witt, Judge and
Anthony Rex Gabbert, Judge

The State brings this interlocutory appeal, challenging the trial court's grant of

Kraig J. Walker's ("Walker") motion to suppress physical evidence relating to possession

of a controlled substance with intent to distribute. The State argues that the trial court

erred in granting Walker's motion to suppress the evidence because the search of

Walker's vehicle was justified under the "automobile exception" to the warrant

requirement. The trial court found that the evidence should be suppressed under its

analysis of the "search incident to arrest" warrant exception. However, because the State

also argued that the search was lawful under the "automobile exception" but the trial

court failed to consider that argument, we reverse and remand for the trial court to determine whether, under the facts, the officers had probable cause to search Walker's automobile under the "automobile exception."

## Factual and Procedural History

For purposes of this appeal, the facts, which are drawn largely from the suppression hearing transcript and the trial court's order, are not in dispute. On October 29, 2013, at 11:51 p.m., Sergeant Jason Payne ("Sergeant Payne") of the Jefferson City Police Department was contacted by a local bail bondsman, Steve Smith ("Smith"), with the location of Damien Rotter ("Damien")[1] who was wanted on a felony warrant. Smith also informed Sergeant Payne that Damien was riding in a white Dodge Charger. Sergeant Payne confirmed the felony warrant, proceeded to the location and contacted Officer Zachary Kolb ("Officer Kolb") to request assistance.

When Sergeant Payne located the white Charger, he witnessed it almost run into a Chevy Suburban which was driven by Smith. Sergeant Payne activated his emergency lights to conduct a traffic stop. As Sergeant Payne approached the four-door white Charger, he noticed Damien trying to hide in the rear left side of the passenger compartment. Sergeant Payne noticed the driver, Walker, had his hands down below the steering wheel in an unusual fashion. Sergeant Payne announced that he was a police officer and then began "screaming" that he was a police officer, but Walker's attention appeared to be focused on Smith, who had gotten out of his vehicle. Sergeant Payne

---

[1] We refer to Damien Rotter and Lindsay Rotter by their first names so as to distinguish them. No disrespect or familiarity is intended.

drew his service weapon because he was in fear of what Walker was doing beneath the steering wheel. Walker was pumping his arms up and down,[2] and ignoring Sergeant Payne, who continued to scream that he was a police officer and "show me your hands."

At that time, Officer Kolb arrived at the scene. Sergeant Payne approached the vehicle, and Officer Kolb removed Damien from the rear, passenger side of the vehicle, placed him in handcuffs, and secured him in his patrol vehicle. Walker kept his hands down until the Sergeant opened the car door and observed a gun on the floorboard at Walker's feet. Sergeant Payne removed Walker from the vehicle and passed him to Officer Kolb.

Sergeant Payne went to the passenger side of the vehicle to remove the front passenger, Lindsay Rotter ("Lindsay"), because he wanted to remove everyone from the vehicle and move them away from the gun. When Sergeant Payne removed Lindsay from the vehicle, he noticed she had a small baggie on her knee that was of the type the sergeant commonly sees used as a package for narcotics. The package had white shards that appeared to be methamphetamine. Although Lindsay was taken into custody, she was released after refusing to give a statement and was never charged with a crime arising from these events.

Officer Kolb also noticed the handgun on the floorboard. He placed Walker in handcuffs and passed Walker to a third officer so that he could assist Sergeant Payne in removing Lindsay from the vehicle. Lindsay was removed from the vehicle and secured in handcuffs.

---

[2] The sergeant believed his movements were consistent with loading a gun.

Officer Kolb retrieved the plastic bag containing residue.  Officer Kolb then began searching the interior of the car where the gun had been found "to see what else he would have been trying to ditch down in between his feet."  Nothing other than the gun and a live bullet were found in the driver's side area of the vehicle.

Officer Kolb searched the rest of the vehicle because of the apparent narcotics found with Lindsay.  The floorboards were the first place Officer Kolb searched because "that's the easiest place for people to throw something down off their lap."  On the floorboards on the passenger side, Officer Kolb found "marijuana shake" or small amounts of loose marijuana that appeared to have been spilled onto the floorboard.  He then opened the center console and found a larger Ziploc baggie full of smaller baggies like the one located on Lindsay's lap.  There were no controlled substances in those baggies.

Officer Kolb then searched the trunk.  Inside was a black zip-up book bag.  Inside of that was a digital scale,[3] a Ziploc bag full of marijuana, a glasses case that also contained small baggies, and four individual baggies of marijuana inside of the large Ziploc bag.  Officer Kolb also found a large amount of cash on Walker's person but no illegal substances.

On April 1, 2014, the State filed an information charging Walker with the class B felony of possession of a controlled substance with intent to distribute, in violation of

---

[3] The testimony at the hearing appears to indicate the scales were found in the bag in the trunk; the motion court's order found that they were in the console.  We do not need to resolve this discrepancy to reach our decision on this point.

4

Section 195.211.[4]  Walker filed a motion to suppress the physical evidence found within the passenger compartment of the car and the trunk.  At the suppression hearing, the State argued that Walker's vehicle was lawfully searched under the "automobile exception" to the warrant requirement.  Walker argued that the search violated *Arizona v. Gant*, 556 U.S. 332 (2009), which addressed the application of the "search incident to arrest" exception to the warrant requirement for a vehicle.  In a written order, the trial court agreed with Walker that the search violated *Gant* without analyzing whether the "automobile exception" to the warrant requirement was applicable to the facts.  The trial court accordingly suppressed the evidence of marijuana seized from the floor of the vehicle, the baggies, and the contents of the backpack.

## Standard of Review

"At a hearing on a motion to suppress, 'the state bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled.'"  *State v. Williams*, 382 S.W.3d 232, 234 (Mo. App. W.D. 2012) (citations omitted).  We review a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defer to the trial court's determinations of credibility.  *State v. Stover*, 388 S.W.3d 138, 149 (Mo. banc 2012) (quoting *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo. banc 2011)).  Review is limited to determining whether the decision is supported by substantial evidence.  *Stover*, 388 S.W.3d at 149 (citation omitted).  However, "[a]nalysis of whether conduct violates the Fourth Amendment is an issue of law that this Court review *de novo*."  *Id*.  Put

---

[4] All statutory references are to RSMo 2000 as currently supplemented unless indicated otherwise.

another way, "legal determinations of reasonable suspicion and probable cause are reviewed *de novo*." *Williams*, 382 S.W.3d at 234 (internal citations and quotations omitted).

## Analysis

In its sole point on appeal, the State argues that the trial court erred in suppressing the evidence, not under the confines of the "search incident to arrest" exception to the warrant requirement set forth in *Arizona v. Gant*, 556 U.S. 332 (2009), but under the "automobile exception" to the warrant requirement. The State appears to concede that the search of Walker's vehicle was not valid under *Gant* but argues, as it did at the suppression hearing, that the search falls instead within the "automobile exception," an exception not addressed by the trial court. We hold that the trial court erred in failing to consider the State's argument that the search fell within the "automobile exception."

The Fourth Amendment to the United States Constitution ensures the rights of citizens to be free from unreasonable searches and seizures and requires that no warrant shall issue except on probable cause supported by oath or affirmation. The Fourth Amendment applies to state actors through the Fourteenth Amendment. *State v. Lovelady*, 432 S.W.3d 187, 190 (Mo. banc 2014) (citation omitted). Additionally, the Missouri Constitution provides coextensive protection such that the same analysis applies under both provisions. *Lovelady*, 432 S.W.3d at 190 (citation omitted); MO. CONST. ART. I, § 15.

"As a general rule, warrantless seizures are unreasonable and unconstitutional." *State v. Hillman*, 417 S.W.3d 239, 247 (Mo. banc 2013) (citation omitted). However, "a

6

warrantless search will not offend the Fourth Amendment if it was conducted pursuant to a well-recognized exception." *State v. Deaton*, 395 S.W.3d 50, 54 (Mo. App. S.D. 2013) (citation omitted). The "automobile exception" is such an exception. *Id.*

"Under the automobile exception to the warrant requirement, police may search a vehicle and seize contraband found if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate the search." *State v. Middleton*, 995 S.W.2d 443, 458 (Mo. banc 1999) (citations omitted). "As a practical matter, exigent circumstances exist whenever an automobile is involved; the mere possibility that the vehicle can be moved is generally sufficient justification for a warrantless search." *Id.* (citations omitted). "Probable cause to search an automobile exists when objective facts, under the totality of the circumstances at the time of the search, would lead a reasonably prudent individual to believe that contraband was located in the automobile." *State v. Irvin*, 210 S.W.3d 360, 362 (Mo. App. W.D. 2006) (citing *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990)). "In an automobile context, probable cause to search exists 'when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband.'" *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990), *quoting U. S. v. Clark*, 559 F.2d 420, 424 (5th Cir. 1977). *See also Deaton*, 395 S.W.3d at 54. Essentially, probable cause requires a reasonable belief that it is more probable than not that the vehicle contains illegal items. *Milliorn*, 794 S.W.2d at 183. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may contain the object of the search." *State v. Lane*, 937 S.W.2d 721, 722

7

(Mo. banc 1997) (quoting *U.S. v. Ross*, 456 U.S. 798 (1982); additional citations omitted).

Here, the State argued that the search of Walker's vehicle was justified under the "automobile exception" because the facts and circumstances would lead a reasonably prudent person to believe that the white Charger contained contraband. In reviewing the record and the trial court's order, we note that the trial court made no findings addressing the credibility of the two officers, the only witnesses who testified at the suppression hearing. The court extensively examined why the "search incident to arrest" exception under *Gant* did not apply to the facts presented but failed to address whether the search was valid under the distinct and separate "automobile exception" to the warrant requirement.

Viewing the totality of the circumstances surrounding the officers' encounter with the vehicle through the lens of the "automobile exception," however, may yield a conclusion that differed from the trial court's application of the "search incident to arrest" doctrine: Sergeant Payne activated his lights and conducted a traffic stop after witnessing Walker's vehicle almost run into Smith's vehicle. Sergeant Payne then was faced with Walker's failure to comply with numerous police orders "screaming" at Walker to show his hands after viewing his suspicious arm movements. The sergeants' suspicion that Walker had a gun was confirmed when they indeed found a gun lying at his feet on the floorboard of his car. The officers also removed from the vehicle a person they had confirmed had an outstanding felony warrant for his arrest, who had been attempting to conceal himself in the back seat. When, for safety reasons, the officers removed the third

8

person from the vehicle, they found evidence of suspected narcotics. In short, Walker's near accident, his failure to comply with an officer's orders, his possession of a firearm after he had been making pumping motions consistent with loading a gun, the presence of a man with a felony warrant who was trying to hide in the back of his vehicle, and the evidence of narcotics may support a finding of probable cause to search the white Charger for weapons and drugs pursuant to the "automobile exception." While testimony was presented to support each of these facts, we do not know if the trial court found the testimony on each issue to be credible and persuasive.

As noted above, it is the State's burden to produce evidence and it bears the risk of nonpersuasion. The State must show by a preponderance of the evidence that the motion to suppress should be overruled. *Williams*, 382 S.W.3d at 234. The trial court overlooked consideration of the "automobile exception," thus, we cannot determine based on this record whether the State met its burden of persuasion to establish by credible evidence that this exception to the warrant requirement applies, making remand appropriate.

In so holding, we note that *Gant* did not eliminate the "automobile exception" to the warrant requirement. While the *Gant* Court expressed some willingness to expand privacy protection where the cause involves a search of a vehicle incident to arrest, the *Gant* Court did nothing to limit the scope of a search under the "automobile exception" to the warrant requirement. In fact, the *Gant* Court reconfirmed that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross,* 456 U.S. 798, 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of

9

any area of the vehicle in which the evidence might be found." *Gant*, 556 U.S. at 347. Further, in refining the circumstances under which the "search incident to arrest" exception can apply, the *Gant* Court held that police "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351. "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant *or show that another exception to the warrant requirement applies*." *Id.* (emphasis added). In this case, we need not detail whether the exception explained in *Gant* would have applied because the State appears to have conceded for purposes of this appeal that it did not apply.

## Conclusion

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

_____
Gary D. Witt, Judge

All concur

10