**STATE of Missouri, Respondent,**

v.

**Davone WHITE, Appellant.**

**ED 104326**

Missouri Court of Appeals,
Eastern District,
**DIVISION ONE.**

Filed: May 16, 2017

1. All rule references are to Missouri Supreme Court Rules (2016).

Christian Lehmberg, Woodrail Centre, 1000 W. Nifong, Bldg. 7, Suite 100, Columbia, MO 65203, for appellant.

Dora A. Fichter, Assistant Attorney General, P.O. Box 899, Jefferson City, MO 65102, for respondent.

Lisa P. Page, Judge

Davone White ("Defendant") appeals his conviction after a jury trial of robbery in the first degree, attempted robbery in the first degree, and two counts of armed criminal action. We affirm in part and reverse and remand in part.

## BACKGROUND

On December 14, 2014, Samuel Hoffman ("Hoffman") and James Lent ("Lent") (collectively, "Witnesses") were fixing Hoffman's car, in front of his house in St. Louis County. An individual in a blue face mask approached, gun in hand, and demanded the Witnesses hand over their money. Lent dumped three to six dollars on the ground, but Hoffman had no money. The assailant took the money and absconded via a burgundy Mercury Sable.

Lent proceeded to follow the assailant in his own vehicle and eventually attempted to block the assailant's escape, but was almost "T-boned" by the assailant's vehicle. During this pursuit, however, Lent was able to observe the assailant's unmasked face and license plate. Upon returning to Hoffman's residence, Lent called 911, the two Witnesses reported

their accounts to the responding law enforcement officer.

Later that same day, Detective Scott Cork ("Detective Cork") investigated the license plate number, reported by Lent, and traced the car back to Defendant. Detective Cork and his partner drove to Defendant's residence and observed Defendant exiting the house, headed toward the Sable, wearing the same clothing as described by the Witnesses.

Thereafter, with computer assistance, Detective Cork generated a photographic lineup; the photographic lineup consisted of a prior photo of Defendant and five other photos selected by Detective Cork based upon their similar characteristics as Defendant. Both Witnesses were provided the opportunity to view this photographic lineup and selected Defendant.

Defendant was arrested and charged with robbery in the first degree, attempted robbery in the first degree and two counts of armed criminal action. Prior to trial, the State offered Defendant a plea deal, for twenty years' imprisonment, which Defendant rejected. After a two day trial, the jury found Defendant guilty of all counts.

The trial court sentenced Defendant to twenty-five years' imprisonment. In doing so, the court stated it relied on information in the sentencing report, the evidence at trial, the background of the case, and the victims' trauma. The court also stated its typical practice was to sentence defendants for more time than what was offered in a plea deal, so defendants would understand the consequences of going to trial.

This appeal follows.

## DISCUSSION

Defendant submits two points on appeal, contending: (I) the identifications by the Witnesses were the result of unnecessarily suggestive police procedures; and (II) the trial court penalized Defendant for exercising his right to a jury trial.

**Point I–The Pretrial Identification Procedures Were Not Unnecessarily Suggestive**

In his first point on appeal, Defendant maintains the pretrial identification procedures were unduly suggestive, thereby causing the Witnesses' out-of-court and in-court identifications to become tainted and inadmissible. Specifically, Defendant argues the Witnesses provided insufficient details of their assailant to create a meaningful lineup, thereby rendering the police procedure so suggestive that it caused both identifications to be unreliable. Thus, Defendant asserts the trial court violated his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution. Absent this alleged error, Defendant maintains he would not have been convicted, and therefore reversal for a new trial is warranted. We disagree.

### Standard of Review

Appellate courts will reverse a ruling on a motion to suppress only if it is clearly erroneous and will reverse admission of testimony only if the trial court abused its discretion. State v. Conrick, 375 S.W.3d 894, 896 (Mo. App. W.D. 2012). In conducting our review, we not only consider the record of the trial, but also the record made of the suppression hearing. State v. Barriner, 210 S.W.3d 285, 296 (Mo. App. W.D. 2006).

### Analysis

When determining whether to exclude an identification of a defendant, the trial court employs a two-part test. Conrick, 375 S.W.3d at 896. The first step requires the court to determine whether the pretrial identification (here a photo

lineup) was impermissibly suggestive. Id. A pre-trial identification is impermissibly suggestive if the identification is not based on the witness's first-hand recollection, but rather the result of suggestive police procedures. State v. Russell, 462 S.W.3d 878, 883 (Mo. App. E.D. 2015). While reliability is the cornerstone of determining the identification testimony's admissibility, the defendant "must [first] clear the suggestiveness hurdle before procuring a reliability review." Barriner, 210 S.W.3d at 296-97 (quoting State v. Vinson, 800 S.W.2d 444, 446 (Mo. banc 1990)).

Here, Defendant contends the identification procedure used by the police was impermissibly suggestive because "Detective Cork was not given anything but age and hair to go on." However, Defendant mischaracterizes the record before us. In addition to age and hair, the two Witnesses identified their assailant as someone between 5'9' and 5'11', wearing a black hoodie, jeans, and tennis shoes. More importantly, Lent also provided a description of the assailant's car and license plate. Based on this information, Detective Cork was able to connect the Sable with Defendant, and used this information, not just "hair and age," as the basis for developing the photo lineup. See State v. Humphrey, 789 S.W.2d 186, 190 (Mo. App. E.D. 1990) (photo lineup was not impermissibly suggestive where, among other things, witnesses to robbery observed getaway car and license plate number which was traced back to the defendant).

Detective Cork selected Defendant's photo, and the photo-array software provided Detective Cork with multiple photos of individuals closely resembling Defendant. Detective Cork chose five to include in the lineup, along with Defendant's photo, and the software randomly sorted the six into a photo lineup. The Witnesses each independently identified Defendant as the perpetrator, and at no time did anyone suggest to either Lent or Hoffman that Defendant was in fact the culprit. Nothing about the Detective's conduct indicates the procedures employed were impermissibly suggestive. See State v. Butler, 534 S.W.2d 832, 834 (Mo. App. 1976) (defendant fails to show suggestiveness in the photographic display, where the police gave a witness eight to 12 photos, including one of defendant, told him to "look through the stack of photographs, take his time, and be sure, and if he wasn't sure, to be sure and tell us"); see also U.S. v. Boston, 494 F.3d 660, 666 (8th Cir. 2007) (no impermissibly suggestive procedures were employed, where photographic lineup presented to witness contained pictures of six individuals with similar physical characteristics and no other identifying information, witness was instructed to look at all of the photos before identifying one, and the order in which the photos were placed was random.).

Since there was nothing suggestive about the line-up, we need not review the reliability of the identification. State v. Russell, 462 S.W.3d at 883. Therefore, the trial court properly admitted the Witnesses' in-court and out-of-court identifications. Foster v. State, 348 S.W.3d 158, 163 (Mo. App. E.D. 2011). Accordingly, the trial court did not abuse its discretion in denying Defendant's motion to suppress.

Point I is denied.

**Point II–Sentencing that Gives Weight to Defendant's Election for Trial is Error**

■ In his second point on appeal, Defendant contends the trial court plainly erred in sentencing him to twenty-five years of imprisonment because the trial court unambiguously punished him for standing trial. Specifically, Defendant argues his sentence was based, at least, in part upon the trial court's practice of sentencing defendants to more time than the

State offered in a plea deal so that criminal defendants know there are consequences for going to trial. Defendant contends this act violated his right to a jury trial, as guaranteed under the Sixth Amendment to the United States Constitution and Article I, Section 22(a) of the Missouri Constitution. Defendant requests his case be reversed and remanded for resentencing.

### Standard of Review

Defendant concedes that he failed to raise the issue of sentencing at trial; we therefore may only conduct review for plain error. State v. Collins, 290 S.W.3d 736, 743 (Mo. App. E.D. 2009). Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted. Rule 30.20. Plain error is error that is evident, obvious, and clear. Id. at 744. An unauthorized sentence affects substantial rights and results in manifest injustice, justifying plain error review. Id.

### Analysis

When fashioning punishment and a prison sentence for a defendant, the sentencing court has a duty to undertake a "case by case, defendant by defendant" assessment. State v. Lindsey, 996 S.W.2d 577, 579 (Mo. App. W.D. 1999). The sentencing court determines the prison sentence of a defendant in view of "all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant." Section 557.036.1, RSMo Cum. Sup. 2014. However, the phrase "all the circumstances" is not without caveat. Greer v. State, 406 S.W.3d 100, 108 (Mo. App. E.D. 2013). "Constitutionally, a court is prohibited from using the sentencing process to punish a defendant who chose to exercise his or her right to proceed to trial." Id.; see also U.S. v. Sales, 725 F.2d 458, 460 (8th Cir. 1984). "That a defendant exercised his or her right to proceed to trial is completely irrelevant at sentencing; if a judge bases a sentence, or any aspect thereof, on a defendant's exercise of his fundamental right to proceed to trial, error has been committed and the sentence cannot stand." Taylor v. State, 392 S.W.3d 477, 488 (Mo. App. W.D. 2012) (quoting State v. Barton, 240 S.W.3d 693, 708 (Mo. banc 2007)). "*Any enhancement* of a defendant's sentence based on this fact would improperly punish a defendant for exercising his or her right to a full and fair trial to a jury." Greer, 406 S.W.3d at 108 (quoting Vickers v. State, 17 S.W.3d 632, 634 (Mo. App. S.D. 2000)) (emphasis in original).

Prior to trial, the State offered Defendant a plea deal, for twenty years' imprisonment, which Defendant rejected. During the sentencing hearing, the trial court described the factors it considered when designing Defendant's sentence. The court properly considered a number of legitimate factors, including information contained in the sentencing assessment report, the evidence presented at trial, the background of the case and "about society and the victims who unfortunately had guns stuck in their face." See Section 557.036.1. The court also properly considered the fact that Defendant "was only out of prison 40 days while he caught a new case, and that while he was in prison he also caught a new case, an assault." See Bello v. State, 464 S.W.3d 284, 291 (Mo. App. W.D. 2015) ("It is the responsibility of the trial judge to impose a punishment which not only fits the crime, but which also fits the criminal.").

However, the following exchange also took place during the sentencing hearing:

THE COURT: ... I also think what the State offered him.

[DEFENDANT'S MOTHER]: Yes.

THE COURT: And my typical practice—and I don't have any reason to deviate—I usually—if the State offers, say, 20 in advance of the trial, I'm going to go more than that for sentencing after a trial—I am—because I want people to understand that it's through their consequences to having trials as well. You follow me?

* * *

DEFENDANT: I heard you say you tend to be harder on people when they take it to trial and lose, but—

THE COURT: Yeah. There are consequences for that decision.

Thus, it appears from the record that the court improperly relied on Defendant's choice to go to trial when designing his sentence. As Judge Ellis of the Missouri Court of Appeals, Western District, eloquently expressed:

> Although I do not doubt the good faith of the trial court, the comments imply that [appellant's] sentence may have been enhanced for challenging the state's evidence and for testifying as to his own recollection of the incident. Any enhancement of his sentence based on those factors serves to punish [appellant] for exercising his right to a full and fair trial. "[S]ince the tenor of the court's observation is not entirely clear, and because the remedy is relatively painless, [I] believe the trial court should be afforded an opportunity to fully examine [its] sentencing procedure and to consider the factors which motivated the sentence imposed." For the public to have confidence that the constitutional right to a jury trial is sacrosanct, even the appearance that punishment is being enhanced because

of exercise of that right must be remedied.

Lindsey, 996 S.W.2d at 583-4 (Ellis, J., dissenting) (quoting Hess v. United States, 496 F.2d 936, 938 (8th Cir. 1974)).

Therefore, Defendant's Point II is granted, and is remanded to the trial court for resentencing.

## CONCLUSION

The judgment of the motion court affirmed in part, reversed in part, and remanded for resentencing, consistent with this opinion.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.