Lisa P. Page, Presiding Judge
Following a jury trial, James Donovan ("Defendant") was convicted of one count each of driving while intoxicated, Section 577.010,[1] possession of marijuana, Section 195.202, unlawful use of drug paraphernalia, Section 195.233, and driving while revoked, Section 302.321.
Defendant contends the trial court: (I) erred in failing to suppress evidence seized during a warrantless search; (II) erred in entering a conviction for driving while intoxicated due to the lack of sufficient evidence; (III) erred in entering a conviction for knowing possession of both marijuana and paraphernalia due to the lack of sufficient evidence; (IV) erred in quashing Defendant's subpoena of the arresting officer's disciplinary and personnel files; (V) abused its discretion in refusing to allow Defendant to inquire into the arresting officer's termination; and (VI) plainly erred by enhancing Defendant's sentence based on Defendant's election to go to trial. We affirm.
BACKGROUND
The facts, viewed in the light most favorable to the verdict rendered by the jury,[2] are as follows. In the early morning hours of April 11, 2014, Officer Chris Locher ("Officer Locher"), of the Foristell Police Department, saw Defendant's vehicle exhibiting an "odd behavior" by signaling a right turn where there was "only farmland [and] no streets for someone to make a right turn." As Officer Locher turned his vehicle around, Defendant "took off at a high rate of speed." Officer Locher activated his lights, sirens, and spotlight and pursued Defendant for approximately one mile. Defendant eventually stopped, after running a stop sign and later making "a long, lazy right turn."
Officer Locher approached on foot and ordered Defendant from his vehicle; Defendant responded with a blank and confused stare. Officer Locher noted Defendant's "glossy and bloodshot" eyes, his "bright red" complexion, the "overwhelming" smell of alcohol, and a faint odor of marijuana. Officer Locher handcuffed Defendant and placed him in the back of his squad car.
Officer Locher then proceeded to search Defendant's vehicle, where he recovered a black backpack from the front seat. Upon searching the backpack, Officer Locher discovered a small bag of marijuana, as well as a dugout and a pipe.
Officer Locher ran Defendant's information through the system, which showed Defendant's license was revoked. He then administered several field sobriety tests, many of which Defendant failed. Defendant refused to take a breathalyzer test. Defendant was arrested, and his car was towed.
*64 Prior to trial, the court ruled that the search of Defendant's vehicle did not offend his right to be free from unreasonable searches and seizures.
Additionally, prior to trial, Defendant subpoenaed the Foristell Police Department, requesting the production of documents regarding Officer Locher, including "any citizen complaints against [him], the [officer's] disciplinary file and [his] personnel file." The trial court quashed this subpoena. At trial, Defendant attempted to question Officer Locher about his termination. However, the court sustained the State's objection, finding Officer Locher's disciplinary and personnel issues irrelevant to Defendant's case. The court instructed the jury to disregard the issue concerning Officer Locher's termination.
The jury found Defendant guilty of one count each of driving while intoxicated, possession of up to thirty-five grams of marijuana, unlawful use of drug paraphernalia, and driving while revoked.[3]
At sentencing, the State recommended a total sentence of one year of incarceration, with execution of the sentence suspended, two years of probation, thirty-days of shock time, and a $300 fine. Defendant in turn requested a total of 30 days incarceration and no fine, stating he wanted to avoid the lengthy probationary period, and stating that he did not believe "he should be penalized for taking his case to trial." In response, the State recommended between six months to a year straight incarceration. Thereafter, the court considered Defendant's prior convictions, the recommendations of the State, and information learned as a result of Defendant's testimony at trial. Specifically, the trial court stated:
Well, [Defendant], I agree that somebody shouldn't be punished for exercising their right to trial, but I've got to tell you, when you have a trial, the Court hears a lot more than they do when the case is first filed, and I can tell you frankly we learned a lot when you testified. I learned a lot of things that I never knew in this case.
The court ultimately sentenced Defendant to two-and-a-half years' incarceration.
This appeal follows.
Point I-Warrantless Search Was Permitted Under the Automobile Exception
In his first point on appeal, Defendant contends the trial court erred in denying Defendant's motion to suppress the warrantless seizure of the marijuana and drug paraphernalia. Defendant maintains this evidence was not admissible under any exception to the Fourth Amendment. Defendant asserts he was thereby deprived of his right to be free from unreasonable searches and seizures, to due process of law, and to a fair trial, as guaranteed by the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 15, and 18(a) of the Missouri Constitution.
Standard of Review
Appellate review of the denial of a motion to suppress is limited to a determination of whether there is substantial evidence to support the ruling. State v. Rousan , 961 S.W.2d 831, 845 (Mo. banc 1998). In making this determination, this court reviews both the record of the suppression hearing and the trial. State v. Ramires , 152 S.W.3d 385, 391 (Mo. App. W.D. 2004). We give deference to the trial court's factual findings and credibility determinations, *65 but questions of law, including whether the Fourth Amendment has been violated, are reviewed de novo. State v. Howes , 150 S.W.3d 139, 142 (Mo. App. E.D. 2004).
Analysis
The Fourth Amendment to the United States Constitution ensures the rights of citizens to be free from unreasonable searches and seizures and requires that no warrant shall issue except on probable cause supported by oath or affirmation. State v. Walker , 460 S.W.3d 81, 85 (Mo. App. W.D. 2015). Generally, "warrantless seizures are unreasonable and unconstitutional." Id. However, "a warrantless search will not offend the Fourth Amendment if it was conducted pursuant to a well-recognized exception." Id.
Automobiles present an "exigent circumstance," where "the mere possibility that the vehicle can be moved" provides sufficient justification for a warrantless search. Id. ; State v. Hampton , 959 S.W.2d 444, 450 (Mo. banc 1997) ("Searches of automobiles, because they are mobile, are generally excepted from the warrant requirement."); State v. Ritter , 809 S.W.2d 175, 177 (Mo. App. E.D. 1991) ("[A] broad and well-established exception to the warrant requirement arises where an automobile is the subject of the search."). Under this exception, police may search anywhere in a vehicle "pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile." State v. Burkhardt , 795 S.W.2d 399, 404 (Mo. banc 1990) ; see also State v. Childress , 828 S.W.2d 935, 943 (Mo. App. S.D. 1992) ("A warrantless search of an automobile may include a search of a container or package found inside the automobile when such a search is supported by probable cause."). A search under the automobile exception is justified not by the arrest of the occupant, but by the circumstances establishing probable cause. Carroll v. U.S. , 267 U.S. 132, 158-59, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
Probable cause is a flexible, common-sense concept dealing with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Hampton , 959 S.W.2d at 451 (quoting Ornelas v. U.S. , 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ). "[P]robable cause to search ... exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Hampton , 959 S.W.2d at 451 ; State v. Milliorn, 794 S.W.2d 181, 183 (Mo. banc 1990) (whether probable cause existed at the time of the search depends on the objective facts as viewed by a reasonably prudent person).
Here, the evidence, when reviewed in a light most favorable to the verdict, demonstrates that a reasonably prudent person would have had probable cause to believe Defendant's vehicle contained evidence of the crime of driving while intoxicated. When Officer Locher first encountered Defendant in the early morning hours of April 11, 2014, he observed Defendant's vehicle exhibiting an "odd behavior" by signaling a right turn where there was "only farmland [and] no streets for someone to make a right turn." As Officer Locher turned his vehicle around, Defendant "took off at a high rate of speed," causing Officer Locher to activate his lights, sirens, and spotlight and pursue Defendant for approximately one mile. After running a stop sign and later making "a long, lazy right turn," Defendant finally stopped. Officer Locher approached on foot and ordered Defendant from his vehicle; Defendant responded *66 with a blank, confused stare. Officer Locher noted Defendant's "glossy and bloodshot" eyes, his "bright red" complexion, the "overwhelming" smell of alcohol, and a faint odor of marijuana.
These facts, taken together, reliably support a finding that Officer Locher had probable cause to suspect Defendant was guilty of the offense of driving while intoxicated. See State v. Swartz , 517 S.W.3d 40, 48 (Mo. App. W.D. 2017) (observations, including erratic driving, the strong odor of intoxicating beverage, bloodshot, glassy, watery eyes, slurred speech, or swaying balance or gait, can be sufficient to support probable cause to arrest for driving under the influence); Newsham v. Dir. of Revenue , 142 S.W.3d 207, 209 (Mo. App. E.D. 2004) ("Probable cause to arrest for driving while intoxicated exists when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist.").
Insomuch as we determine probable cause presented Officer Locher with an exigent circumstance to search Defendant's automobile without a warrant, Defendant's right to be free from an unreasonable search was not offended.
Point I is denied.
Point II-Sufficient Evidence Existed to Sustain Defendant's DWI Conviction
In his second point on appeal, Defendant contends the trial court erred in entering judgment and sentence against him on the count of driving while intoxicated, in violation of Section 577.010. Defendant maintains insufficient evidence existed to prove he operated the vehicle while under the influence of alcohol. Defendant asserts he was thereby deprived of his right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, section 10 of the Missouri Constitution.
Standard of Review
Our review of this claim is limited to determining whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime. State v. Caines , 427 S.W.3d 305, 307 (Mo. App. E.D. 2014). All evidence favorable to the verdict, and the reasonable inferences therefrom, are accepted as true, while contrary evidence and inferences are disregarded. State v. Scholl , 114 S.W.3d 304, 307 (Mo. App. E.D. 2003). We defer to the trial court's determinations of witness credibility and weight of the evidence. Id.
Analysis
A person commits the crime of driving while intoxicated ("DWI") if he operates a motor vehicle while in an intoxicated or drugged condition. Section 577.010.1. Thus, to obtain a DWI conviction, the State must prove beyond a reasonable doubt that the defendant (1) operated a vehicle (2) while intoxicated. State v. Wilson , 343 S.W.3d 747, 751 (Mo. App. E.D. 2011).
On appeal, Defendant does not contest the first element of the charged crime, but, rather, avers the State lacked sufficient evidence to demonstrate that he was, in fact, intoxicated.
A person is in an "intoxicated condition" when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof. Section 577.001.3. "Under the influence of alcohol" has been defined as "any intoxication that in any manner impairs the ability of a person to operate an automobile." State v. Edwards , 280 S.W.3d 184, 189 (Mo. App. E.D. 2009). Intoxication may be proven by the defendant's *67 behavior including observations made by a trained professional concerning the defendant's motor vehicle operation, Humes v. Dir. Mo. Dept. of Revenue , 908 S.W.2d 156, 158 (Mo. App. E.D. 1995), the driver's loss of balance, slurred speech, lack of body coordination, and impairment of motor reflexes, State v. Royal , 277 S.W.3d 837, 840 (Mo. App. W.D. 2009), or the driver's refusal to take a breathalyzer test, Caines , 427 S.W.3d at 309.
Here, Officer Locher observed Defendant's erratic behavior while driving, including Defendant's use of a right turn signal where no road existed, Defendant's speeding away for approximately a mile after Officer Locher turned on his lights, sirens, and spotlight, and Defendant's "long, lazy right turn" prior to stopping. When Officer Locher approached Defendant's vehicle on foot, ordering Defendant from the car, Defendant simply gave him a blank and confused stare, his eyes were "glossy and bloodshot," and his complexion was "bright red." Officer Locher noted the "overwhelming" smell of alcohol and the faint odor of marijuana. Defendant failed multiple field sobriety tests, and refused to take a breathalyzer test.
Defendant disputes the propriety of using the horizontal gaze nystagmus ("HGN") test results, due to the fact that the alcohol influence report ("AIR") denoted Defendant had "resting nystagmus," a condition that prohibits administration of the HGN. However, Officer Locher testified at trial that he did not observe resting nystagmus, and did not know why the form indicated as such. The weight and credibility of this factual dispute was for the fact-finder to resolve, and we defer to the credibility determination of the officer's testimony. State v. Williams , 565 S.W.2d 749, 749 (Mo. App. 1978).
Defendant further disputes the use of evidence of the "walk and turn" test, as administered by Officer Locher, because Defendant was wearing inappropriate footwear under NHTSA guidelines. However, compliance with the NHTSA for tests such as the walk and turn are not required, as these tests "merely assist the officer in observing the suspect's reactions and physical condition." State v. Burks , 373 S.W.3d 1, 7 (Mo. App. S.D. 2012).
Therefore, the totality of the evidence is more than sufficient to sustain a conviction for driving while intoxicated. See Edwards , 280 S.W.3d at 189 (evidence sufficient to support DWI conviction where officer smelled moderate odor of alcohol on the defendant, the defendant's speech was slurred, and his eyes were bloodshot and watery, he failed four of six indicators on the HGN test, refused further field sobriety tests, including breath test, and the officer testified that, in his opinion, he believed defendant was impaired).
Point II is denied.
Point III-Sufficient Evidence Existed to Sustain Defendant's Possession Conviction
In his third point on appeal, Defendant contends the trial court erred in entering judgment and sentence against him on the counts of possession of less than thirty-five grams of marijuana, in violation of Section 195.202, and unlawful use of drug paraphernalia, in violation of Section 195.233. Defendant maintains insufficient evidence existed to prove he knowingly possessed the marijuana, dugout, and pipe found in his backpack. Defendant asserts he was thereby deprived of his right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, section 10 of the Missouri Constitution.
Standard of Review
Our review of a challenge to sufficiency of the evidence to support a conviction is *68 limited to a determination of whether the State introduced sufficient evidence at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt. State v. Oliver, 293 S.W.3d 437, 444 (Mo. banc 2009). We accept as true all evidence and reasonable inferences favorable to the verdict, disregarding contrary inferences "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." Id.
Analysis
It is unlawful to possess marijuana, Section 195.202, as well as to possess (with intent to use) drug paraphernalia, Section 195.233. The General Assembly defined the word "possess" as: "a person, with the knowledge of the presence and nature of a substance, [who] has actual or constructive possession of the substance." Section 195.010(34); State v. Twitty , 506 S.W.3d 345, 347 (Mo. banc 2017). Thus, to prove Defendant's two "possession" convictions, the State was required to demonstrate that he: (1) had conscious and intentional possession, either actual or constructive, of the controlled substance and paraphernalia; and (2) was aware of the presence and nature of the controlled substance and paraphernalia. State v. Phillips, 477 S.W.3d 176, 179 (Mo. App. E.D. 2015) ; Section 195.010(34). Both possession and knowledge may be proved by circumstantial evidence. State v. Purlee , 839 S.W.2d 584, 587 (Mo. banc 1992).
A person has actual possession if he has the substance on his person or within easy reach and convenient control. State v. Stover , 388 S.W.3d 138, 146 (Mo. banc 2012). Further, "actual possession alone may provide a reasonable inference of such knowledge[.]" State v. Goff , 439 S.W.3d 785,793 (Mo. App. S.D. 2014) ; State v. Jackson , 806 S.W.2d 426, 428 (Mo. App. E.D. 1991) ("A jury may infer that a person knows the nature of drugs in his actual possession.").
Here, the evidence was sufficient to support a finding that Defendant had both knowledge of the presence of and actual control over the marijuana and drug paraphernalia. Defendant was alone in the car on the night in question, and the backpack containing the illicit items was located on the front passenger seat. Defendant further admitted ownership of the backpack. Officer Locher detected the faint smell of marijuana emanating from Defendant's vehicle, and Defendant's initial response to Officer Locher's questioning was to give the officer a blank and confused stare with glossy and bloodshot eyes. See Goff , S.W.3d at 792 (the defendant actually possessed controlled substance located in backpack where the defendant admitted the backpack was his, backpack was located within arm's reach of driver's seat, and the defendant exhibited behavior consistent with drug use); Purlee , 839 S.W.2d at 588-589 (the defendant was found to have possessed contraband, wherein the officer noted the odor of marijuana emanating from the defendant's vehicle at the time of arrest, the defendant's duffel bag was in close proximity to the marijuana, and both were easily accessible to the defendant).
Nevertheless, Defendant contends he was not aware that the marijuana and paraphernalia were in his bag, thereby denying knowledge of their presence. The jury found him guilty of both charges, indicating they disbelieved his testimony on these factual issues. The jury is the ultimate arbiter of questions of fact, and was permitted to draw inferences from the evidence presented; we will not reweigh a jury's credibility determinations on appeal. Goff , 439 S.W.3d at 790 ("[T]he credibility *69 and weight of testimony are for the jury to determine.").
Point III is denied.
Point IV-No Abuse of Discretion in Quashing Subpoena of Officer's Records
In his fourth point on appeal, Defendant contends the trial court abused its discretion in quashing his subpoena of Officer Locher's personnel and disciplinary files. Prior to trial, Defendant subpoenaed the Foristell Police Department, requesting the production of documents regarding Officer Locher, including "any citizen complaints against [him], the [officer's] disciplinary file and [his] personnel file." Defendant maintains these records contained vital impeachment evidence necessary to challenge Officer Locher's testimony. Defendant asserts he was deprived of his rights to due process of law and to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.
Standard of Review
The abuse of discretion standard applies when reviewing claims of denial of meaningful discovery and concerning the relevancy and admissibility of evidence. State v. Taylor , 134 S.W.3d 21, 26 (Mo. banc 2004). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Id. "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." Id.
Analysis
Under Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "[t]he government must turn over evidence in its possession that is favorable to the accused and material to guilt or punishment." State v. Parker , 886 S.W.2d 908, 916-17 (Mo. banc 1994). This includes "evidence that may be used to impeach a government witness." State v. Newton , 925 S.W.2d 468, 471 (Mo. App. E.D. 1996) (quoting U.S. v. Bagley , 473 U.S. 667, 674-77, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ).
However, for records which may contain privileged information[4] to be discoverable, Missouri courts have held the party must "make some plausible showing how the information would have been material and favorable." Parker , 886 S.W.2d at 916-17 ; Newton , 925 S.W.2d at 471 ("In order for the suppression of said evidence to rise to a constitutional violation, the evidence must be material in the sense that its suppression undermines confidence in the outcome of the trial."). This showing must indicate more than a mere possibility that the material contains relevant or exculpatory evidence; there must be a showing of a factual predicate as to relevancy and materiality to justify a review.
*70 State v. Artis , 215 S.W.3d 327, 337 (Mo. App. S.D. 2007) ; Parker , 886 S.W.2d at 916-17 ("The defendant is not entitled to information on the mere possibility that it might be helpful."). If such a showing is made, the trial court may conduct an in camera review to determine if the records are actually privileged. Artis , 215 S.W.3d at 337 (emphasis added).
In State ex rel. King v. Sheffield , 901 S.W.2d 343, 345 (Mo. App. S.D. 1995), the defendant was arrested for, inter alia , resisting arrest. Id. The defendant sought access to the personnel records of an officer involved in the defendant's arrest, claiming the officer instigated or aggravated the events leading to the charge. Id. The defendant claimed that if the officer's personnel records would show he had been involved in other incidents, this information could be used to impeach the officer's credibility. Id. at 347. The Missouri Court of Appeals, Southern District, quashed the defendant's subpoena of the officer's records, finding that the defendant failed to show the officer had ever engaged in any such prior incidents. Id. Therefore, the defendant's claim was speculative, and as a result the records were immaterial to the proceedings. Id. at 348.
Here, prior to trial, Defendant subpoenaed the Foristell Police Department, requesting the production of documents regarding Officer Locher, including "any citizen complaints against [him], the [officer's] disciplinary file and [his] personnel file;" this request was denied. As in Sheffield , Defendant has failed to demonstrate that Officer Locher's files contain relevant or exculpatory evidence indicating his discharge was due to his conduct on the night in question. The trial court acted within its discretion when denying Defendant's discovery request. See Taylor , 134 S.W.3d at 26.
Point IV is denied.
Point V-Trial Court Did Not Improperly Limit Impeachment of Officer
In his fifth point on appeal, Defendant contends the trial court abused its discretion in prohibiting him from cross-examining Officer Locher concerning his termination from the Foristell Police Department. Defendant maintains this line of questioning was proper impeachment of Officer Locher. Defendant asserts he was deprived of his rights to due process of law and to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.
Standard of Review
The admission or exclusion of evidence rests in the sound discretion of the trial court, and the court's decision will be reversed only if it constitutes an abuse of discretion. Peters v. ContiGroup , 292 S.W.3d 380, 392 (Mo. App. W.D. 2009). This discretion includes the duty to determine the relevance and materiality of evidence proffered for impeachment. State v. Harrison , 213 S.W.3d 58, 72 (Mo. App. S.D. 2006).
Analysis
To be admissible, evidence must be both logically and legally relevant. State v. Taylor , 466 S.W.3d 521, 528 (Mo. banc 2015). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Id. "Legal relevance, on the other hand, concerns the balance between the probative value and the prejudicial effect of the evidence." Frazier v. City of Kansas , 467 S.W.3d 327, 338 (Mo. App. W.D. 2015) (citation omitted). "That balancing requires the trial court to weigh the probative value, or usefulness, of the evidence *71 against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." Id. (citation omitted). "If the cost of the evidence outweighs its usefulness, the evidence is not legally relevant and should be excluded." Id. ; see also State v. Mann , 23 S.W.3d 824, 835 (Mo. App. W.D. 2000) ("A trial court's exclusion of an offer of impeachment on an immaterial or collateral matter does not constitute an abuse of discretion."); State v. Miles , 412 S.W.2d 473, 476 (Mo. 1967) ("There is no error in excluding offers of proof or evidence tending to impeach a witness on an immaterial or collateral matter.").
As a general proposition, "the credibility of witnesses is always a relevant issue in a lawsuit." State v. Smith , 996 S.W.2d 518, 521 (Mo. App. W.D. 1999). "Anything that has the legitimate tendency of throwing light on the accuracy, truthfulness, and sincerity of a witness is proper for determining the credibility of the witness." State v. Strughold , 973 S.W.2d 876, 891 (Mo. App. E.D. 1998). However, attacks on a witness's credibility in a criminal proceeding are subject to limitations, and not every attacked will be permitted. Smith , 996 S.W.2d at 521. Impeaching testimony should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity. Harrison , 213 S.W.3d at 73. "[I]mpeachment may not concern an immaterial or collateral matter." State v. Dunson , 979 S.W.2d 237, 242 (Mo. App. W.D. 1998).
"A matter is considered to be collateral if the fact in dispute is of no material significance in the case or is not pertinent to the issues developed." Id. Conversely, "[a] matter is not collateral if the alleged discrepancy involves a crucial issue directly in controversy or relates to any part of the witness account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true." State v. Williams , 849 S.W.2d 575, 578 (Mo. App. E.D. 1993) (citation omitted). Thus, for example, specific acts of misconduct, without proof of bias or relevance, are collateral, with no probative value. Harrison , 213 S.W.3d at 73.
"A trial court's exclusion of an offer of impeachment on an immaterial or collateral matter does not constitute an abuse of discretion." State v. Mann , 23 S.W.3d 824, 835 (Mo. App. W.D. 2000). Moreover, "[t]he exclusion of testimony that is intended solely for impeachment purposes is not fundamentally unfair if the appellant had the opportunity to thoroughly cross-examine the witness whose testimony was to be impeached." State v. Simmons , 515 S.W.3d 769, 775 (Mo. App. W.D. 2017) ; see also State v. Payne , 126 S.W.3d 431, 443 (Mo. App. S.D. 2004) ("The opportunity for effective cross-examination does not necessarily include cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (citations omitted).
At trial, Defendant sought to impeach Officer Locher's credibility during cross-examination by inquiring into his termination from the Foristell Police Department. The trial court sustained the State's objection to this line of questioning, finding Officer Locher's termination irrelevant, and instructed the jury to disregard Defendant's question because "[Officer Locher's] leaving the department had nothing to do whatsoever with this case."
As we have discussed in Point IV, supra, Defendant failed to demonstrate more than a mere possibility that Officer Locher's personnel and disciplinary files contained *72 relevant or exculpatory evidence. Any similar line of impeachment on cross-examination would also be collateral to the proceedings, as there is no evidence the specific instance Defendant sought to explore-Officer Locher's termination-had any bearing on his encounter with Defendant on the night in question. Further, while Officer Locher's reputation for truth and veracity was indeed logically relevant, the trial court was within its discretion to limit such impeachment to non-collateral matters to avoid misleading the jury. Dunson , 979 S.W.2d at 242.
Additionally, the record demonstrates that, outside of this issue, Appellant had ample opportunity to cross-examine Officer Locher, including generalized questions concerning procedure as well as specific questions, including his checking of the "resting nystagmus" box on the AIR (see footnote 4, supra ). The jury was able to adjudge Officer Locher's credibility, and we will not reweigh such determinations on appeal. See Goff , 439 S.W.3d at 790 ("[T]he credibility and weight of testimony are for the jury to determine.").
Without some other showing that Officer Locher was terminated because of the events on the night in question, we cannot say the trial court abused its discretion in excluding this issue. See Frazier v. City of Kansas , 467 S.W.3d at 340-41 (court did not abuse its discretion in denying the defendant the opportunity to impeach an officer's testimony for credibility concerning alleged violations of protocol).
Point V is denied.
Point VI-Defendant's Sentence Was Not Improperly Enhanced
In his sixth point on appeal, Defendant contends the trial court plainly erred in relying on information revealed at trial when imposing Defendant's sentence. Defendant maintains the court's comments made during the sentencing hearing imply Defendant's sentence was enhanced because he chose to go to trial. Defendant asserts he was therefore deprived of his right to a jury trial, as guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 22(a) of the Missouri Constitution.
Standard of Review
Defendant concedes that he failed to raise the issue of sentencing at trial; we therefore may only conduct review for plain error. State v. Collins , 290 S.W.3d 736, 743 (Mo. App. E.D. 2009). Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted. Id. ; see also Rule 30.20. Plain error is error that is evident, obvious, and clear. State v. White , 518 S.W.3d 288, 293 (Mo. App. E.D. 2017). An unauthorized sentence affects substantial rights and results in manifest injustice, justifying plain error review. Id.
Analysis
When fashioning punishment and a prison sentence for a defendant, the sentencing court has a duty to undertake a "case by case, defendant by defendant" assessment. State v. Lindsey , 996 S.W.2d 577, 579 (Mo. App. W.D. 1999). The sentencing court determines the prison sentence of a defendant in view of "all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant." Section 557.036.1. We presume that the trial court's experience and expertise enable the judge to consider appropriate sentencing factors and to disregard improper matters. Lindsey , 996 S.W.2d at 579.
However, the phrase "all the circumstances" is not without caveat.
*73 Greer v. State , 406 S.W.3d 100, 108 (Mo. App. E.D. 2013). "Constitutionally, a court is prohibited from using the sentencing process to punish a defendant who chose to exercise his or her right to proceed to trial." Id. ; see also U.S. v. Sales , 725 F.2d 458, 460 (8th Cir. 1984). "Any enhancement of a defendant's sentence based on this fact would improperly punish a defendant for exercising his or her right to a full and fair trial to a jury." Greer , 406 S.W.3d at 108 (quoting Vickers v. State , 17 S.W.3d 632, 634 (Mo. App. S.D. 2000) ).
Recently, in White , this Court found the trial court appeared to improperly punish the defendant for going to trial. 518 S.W.3d 288. The state offered the defendant a plea deal for twenty years' imprisonment, which the defendant rejected. Id. at 293. Defendant elected to go to trial, was found guilty, and the trial court sentenced the defendant to twenty-five years. Id. In describing the rationale for the longer sentence, the court properly considered information about the defendant's prior criminal history and penchant as a repeat offender, as well as the evidence presented at trial, the background of the case, and the victim's injuries. Id. However, the court also stated it had sentenced the defendant to a longer period than the state offered because of the following rationale:
And my typical practice-and I don't have any reason to deviate-I usually-if the State offers, say, 20 in advance of the trial, I'm going to go more than that for sentencing after a trial-I am-because I want people to understand that it's through their consequences to having trials as well. You follow me?
Id. at 294. The sentencing court also informed the defendant that "there were consequences for that decision [to go to trial]." This Court reversed for a new sentencing proceeding, finding the trial court improperly relied on the defendant's choice to go to trial. Id.
Here, at sentencing, the State recommended a total sentence of one year of incarceration, execution of the sentence suspended, two years of probation, 30 days shock time, and a $300 fine. Defendant in turn requested a total of 30 days incarceration and no fine, stating he wanted to avoid the lengthy probationary period. Defendant then stated, unprompted, that he did not believe "he should be penalized for taking his case to trial." The following exchange then occurred:
COURT: Well, [Defendant], I agree that somebody shouldn't be punished for exercising their right to trial, but I've got to tell you, when you have a trial, the Court hears a lot more than they do when the case is first filed, and I can tell you frankly, we learned a lot when you testified. I learned a lot of things that I never knew in this case.
I'm looking through this. You're trying to make it sound like you just once or twice sold a little drugs for your friend, and no doubt-I don't know what got you into it. You got three felony convictions in St. Charles for doing that. They apparently dropped one of the four that they charged you with. And then we got Dent County, and that's also multiple. From this, it seems fairly obvious that you're a drug dealer who specializes in marijuana, so I just don't imagine-
DEFENDANT: That's not accurate, sir.
COURT: -that I can be shocked if you're caught with marijuana. So I have to agree with you. I don't think probation is the answer.
The state recommended between six months to a year straight jail time, but the court ultimately sentenced Defendant to two-and-a-half years in prison.
If a judge "bases a sentence, or any aspect thereof, on a defendant's exercise *74 of his fundamental right to proceed to trial, error has been committed and the sentence cannot stand[.]" White , 518 S.W.3d at 293. However, it is not the case that the trial court did so here. A thorough examination of the record indicates the sentencing court designed Defendant's sentence based on his prior criminal record and information which was provided to the court during the sentencing hearing. See Bello v. State , 464 S.W.3d 284, 291 (Mo. App. W.D. 2015) ("It is the responsibility of the trial judge to impose a punishment which not only fits the crime, but which also fits the criminal.").
It is also clear that the only reason the issue of Defendant's election to proceed to trial was discussed at the sentencing hearing was because Defendant injected the issue into the discussion. After Defendant told the court he did not believe "he should be penalized for taking his case to trial," the court agreed, stating: "Well, I agree that somebody shouldn't be punished for exercising their right to trial...." The court then pivoted to discussing information revealed during Defendant's testimony, and relied on these facts when designing Defendant's sentence; this reliance is not in error. See Lindsey , 996 S.W.2d at 581 ("The law does not expect or require the sentencing court to ignore the accused's own testimony offered at trial.").
Although the court ultimately sentenced Defendant to a term of incarceration that exceeded that which was recommended by the State, no evidence exists before this court indicating a consistent pattern of handing out maximum sentences, as was the indication in White. 518 S.W.3d at 294. Instead, the record indicates the court merely considered "all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant." Section 557.036.1; Lindsey , 996 S.W.2d at 579.
Point VI is denied.
CONCLUSION
The judgment of the trial court is affirmed.
Roy L. Richter, J., and Philip M. Hess, J., concur.

All statutory citations are to RSMo Cum. Sup. 2014 unless otherwise indicated.

State v. Mackey , 822 S.W.2d 933, 934 (Mo. App. E.D. 1991).

Defendant was found not guilty of one additional account of failure to stop, Section 304.351.

Throughout these proceedings, the State has contended Officer Locher's files were non-discoverable under Missouri's Sunshine Law. Section 610.021 (sealing records to the extent they relate to the disciplining of a public employee or individually identifiable personnel records); Wolfskill v. Henderson , 823 S.W.2d 112, 114 (Mo. App. W.D. 1991) (internal investigatory file of police department may be kept closed from public scrutiny). However, this general prohibition only extends to the public's access to such files, and so Defendant correctly recognizes that if the information is "material and favorable" to his case, the Sunshine Law does not per se bar its admission. See State ex rel. Jackson County Grand Jury v. Shinn , 835 S.W.2d 347, 348 (Mo. App. W.D. 1992) (Subpoena for "all documents and recordings maintained in the internal affairs investigation file" concerning police officers allowed).