# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1166

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Roosevelt Sims, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 20, 2005
Filed: October 3, 2005

_____

Before LOKEN, Chief Judge, ARNOLD, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Roosevelt Sims entered a conditional plea of guilty to unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), after the district court[1] denied his motion to suppress evidence obtained from a search of his van. The district court sentenced Sims to 54 months' imprisonment, and he appeals the denial of his motion to suppress. We affirm.

_____

[1]The Honorable Fernando J. Gaitan, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri.

We recite the facts as found by the magistrate judge in a report and recommendation that was adopted by the district court. At 7:10 p.m. on May 2, 2004, Kansas City Police Department ("KCPD") officers were dispatched to investigate a reported street robbery. At the crime scene, the officers interviewed three witnesses to the robbery who said they saw a man with a gun chasing another man up the street, then saw the man with the gun get into a blue Pontiac Transport van. One witness identified the assailant as Roosevelt Sims. The witnesses stated that Sims left the crime scene in the blue van by himself. The officers went to Sims's residence, where Sims's daughters informed them that he had gone to St. Luke's Hospital to visit their mother, who was having a baby.

The officers drove to the hospital and learned from hospital personnel that Sims had not yet been there to see his wife. They asked the hospital personnel to detain Sims and contact them if he arrived. While leaving the hospital, the officers drove through the surrounding parking lots and did not see a blue Pontiac Transport van. At 8:01 p.m., shortly after the officers departed, they were informed that hospital security had detained Sims.

The officers returned to the hospital and saw for the first time a blue Pontiac Transport van parked about 50 feet from the emergency room door. The officers were met near the emergency room door by hospital security officers and Sims, and they placed Sims under arrest for suspicion of robbery. Sims told the officers that he had just driven to the hospital and had seen the officers in their car at the hospital ten minutes earlier.

After Sims and his wife declined to grant consent to search the van, one of the officers contacted his supervisor, a sergeant in the KCPD robbery unit, to discuss the situation. The sergeant informed the officers that there was no need to obtain consent

to search the vehicle. He explained that because the vehicle was suspected of use in an armed robbery and had potential evidentiary value, it would be towed in accordance with KCPD policy.

Section A of the KCPD's General Towing Requirements provides that:

> Vehicles will be towed when the vehicle is known or believed to have been used in the commission of a crime and has evidentiary value, unless it is processed at the scene and can be released to the owner/operator.

(Gov't Ex. 1). Having been informed by the sergeant that this policy called for Sims's vehicle to be towed, the officers summoned a tow truck.

Another policy of the KCPD provides that officers shall inventory the contents of a vehicle before it is towed. Accordingly, the officers obtained keys to the van from Sims's wife and searched the van. This search revealed a handgun in an open compartment in one of the door panels.

Sims filed a motion to suppress the evidence seized during the search of the van, as well as statements he made later to an investigator, arguing that the warrantless search was unconstitutional and that his ensuing admissions were "fruit of the poisonous tree." The government argued that the warrantless search was justified either as an inventory search related to a proper impoundment or as a search incident to arrest. Relying on the former argument, the district court denied the motion to suppress.

Sims argues on appeal that the impoundment of the van was unconstitutional. We recognize, of course, that police may take certain vehicles into custody, without probable cause that they will furnish evidence of a crime, as part of the police department's "community caretaking functions." *South Dakota v. Opperman*, 428

U.S. 364, 368 (1976). "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369. Sims argues, however, that the officers did not impound his vehicle based on public safety concerns or their community caretaking function, but rather acted solely for investigative purposes. Thus, he contends, the impoundment ran afoul of *Colorado v. Bertine*, 479 U.S. 367 (1987), which held that police may exercise discretion to impound a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375.

We are not persuaded by the government's responsive contention that the impoundment is permissible merely because the police department followed a policy that says it will impound any vehicle that is "believed to have been used in the commission of a crime and has evidentiary value." Impoundments and inventory searches are exempt from the normal requirement of probable cause precisely because the police are acting "on the basis of something other than suspicion of evidence of criminal activity." *Id.*; *see also Opperman*, 428 U.S. at 370 n.5. A police department may not avoid the constitutional requirement of probable cause simply by adopting a standard policy to impound vehicles based only on a "belief" that the vehicle was involved in the commission of a crime and has evidentiary value. A seizure based solely on suspicion that the vehicle constitutes or contains evidence of criminal activity must be supported by probable cause.

Nonetheless, we conclude that the impoundment of Sims's vehicle was consistent with the Fourth Amendment, because police did have probable cause to seize the vehicle, and an automobile may be seized without a warrant under the "automobile exception" to the warrant requirement. *Chambers v. Maroney*, 399 U.S. 42, 51 (1970); *United States v. Hill*, 91 F.3d 1064, 1070 (8th Cir. 1996). In this case, witnesses identified Sims as the assailant in the robbery and saw him leave the scene in a blue Pontiac Transport van. Sims's family informed police that Sims had

traveled to the hospital, and police located a blue Pontiac Transport van in the hospital parking lot shortly after Sims arrived. The van was found only about an hour after the robbery, so the likelihood that evidence of the crime remained in the vehicle was relatively high. These facts established probable cause for the seizure. Once the vehicle was impounded, the police were justified in searching the vehicle without a warrant based on their standard inventory policy (notwithstanding the presence of an additional investigative motive), *United States v. Garner*, 181 F.3d 988, 991 (8th Cir. 1999), or based on probable cause to believe that the van contained evidence of the robbery. *See Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999).

For these reasons, the handgun in Sims's van was not discovered as a result of a violation of the Fourth Amendment, and Sims's subsequent statements to law enforcement officers were not the fruit of an unlawful search or seizure. Therefore, the district court properly denied the motion to suppress, and the judgment is affirmed.

_____