# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2556

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Christopher Taylor, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 2010
Filed: February 18, 2011

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Christopher Taylor pled guilty to possession with intent to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), reserving the right to appeal the denial of his motion to suppress by the district court. He now appeals, and we reverse.

I.

On January 6, 2006, Kansas City Police Department (KCPD) detective Tiffany Gillespie and her partner responded to a request by a fellow officer to follow a green

1500 Chevrolet truck and initiate a traffic stop if the driver, who officers later identified as Taylor, committed a traffic violation. Officer Gillespie was informed that Taylor was suspected of involvement in a narcotics transaction and that the narcotics were believed to be in his vehicle. Officer Gillespie observed Taylor fail to signal before changing lanes, and she initiated a traffic stop. When Taylor could not produce a valid insurance card, she arrested him and took him into custody.

KCPD towing policy dictates that when an individual is arrested for a traffic violation, the officer should give the individual the option to release the vehicle to another driver, allow the vehicle to be left at the scene, or drive the vehicle to the police station. Officer Gillespie did not provide Taylor with these options, however, because of another KCPD policy requiring the impoundment of a vehicle "when the vehicle is known or believed to have been used in the commission of a crime and has evidentiary value." Based on this policy, Officer Gillespie decided to tow and search the vehicle.

Regardless of under what portion of the policy an impoundment occurs, KCPD policy further requires officers to complete a tow-in report when a vehicle is being towed. The tow-in report must include a "content inventory," which is a "detailed inventory and listing of items located inside of the vehicle being towed." When a towed vehicle contains "valuable property in large quantities," officers must nevertheless generate a detailed inventory, using an additional form if more space is needed to list the contents of the vehicle. Upon searching Taylor's vehicle, Officer Gillespie discovered hundreds of tools, several pieces of equipment, as well as a plastic bag containing approximately 74 grams of powder cocaine, clothing, toiletries, and paper. In completing the tow-in report, Officer Gillespie did not itemize or list the hundreds of tools, but wrote "misc. tools" in the relevant section of the form.

After Taylor was charged, he moved to suppress the cocaine evidence found in his vehicle, arguing that the search violated the Fourth Amendment. The Government contended that the search was valid under the inventory search exception to the Fourth Amendment warrant requirement. The district court adopted the magistrate judge's conclusion that the search was valid under the inventory search exception to the warrant requirement because Officer Gillespie complied with KCPD policy requiring the towing of a vehicle and an inventory of its contents when officers believe the vehicle was used in the commission of a crime. The district court additionally found that the facts did not demonstrate that the inventory was a pretext for an investigatory search. After the district court denied his motion to suppress, Taylor pled guilty to possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, reserving the right to appeal the district court's denial of his motion to suppress.

II.

Generally, when reviewing a denial of a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999). We also review the district court's findings of fact regarding the circumstances of an inventory search for clear error, United States v. Rowland, 341 F.3d 774, 778 (8th Cir. 2003), including the question of pretext. Garner, 181 F.3d at 992.

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" Mincey v. Arizona, 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception allows law enforcement to inventory the contents of a lawfully impounded vehicle without a warrant or probable

cause. Rowland, 341 F.3d at 779. The Government bears the burden of showing that its conduct complied with the inventory search exception to the warrant requirement. United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993).

The inventory search exception is necessary for "the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." South Dakota v. Opperman, 428 U.S. 364, 369 (1976) (internal citations omitted). Because the police are engaging in their community caretaking function—not their criminal investigatory function—in meeting these needs, they do not need a warrant or probable cause. Marshall, 986 F.2d at 1174. The search of a vehicle to inventory its contents must nevertheless be reasonable under the totality of the circumstances, United States v. Hall, 497 F.3d 846, 851 (8th Cir. 2007), and may not be "a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990). The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally "remove the inference that the police have used inventory searches as 'a purposeful and general means of discovering evidence of a crime.'" Marshall, 986 F.2d at 1174 (quoting Colorado v. Bertine, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring)).

Here, the police did not comply with KCPD standardized procedures. KCPD procedures not only require officers to create a detailed, itemized inventory when any vehicle is towed, they also specifically require officers to create the same inventory when a vehicle containing a large quantity of valuable items is towed. At the time of the inventory search, Taylor, a handyman, had two toolboxes that each contained over a hundred items, including pliers, wrenches, screwdrivers, and drill bits. He also had two additional toolboxes, several chains, a hydraulic jack, a crate, lug wrenches, a paint roller, a flashlight, a shingle remover, a band clamp, an electric chainsaw, and an electric circular saw, among other things. Given the hundreds of valuable tools in

-4-

Taylor's truck, Officer Gillespie's description of "misc. tools" does not constitute a detailed, itemized inventory.

Although the Government contends that it would be "absurd" to expect Officer Gillespie to accurately identify and itemize the tools in Taylor's truck, the constitutionality of an inventory search does not rise and fall on the abilities of a particular police officer—the inquiry is whether, under the totality of the circumstances, the inventory search was reasonable. Rowland, 341 F.3d at 779. In this case, Officer Gillespie did not write down even general descriptions of the commonplace tools and equipment in Taylor's truck, such as toolbox, screwdriver, chainsaw, or flashlight. Nor did she take any other steps in an attempt to create a detailed inventory, such as seeking assistance in identifying the tools or photographing them in lieu of identifying them. See Garner, 181 F.3d at 991 (explaining that an officer used photographs to supplement the written list in recording the contents of the defendant's vehicle). These circumstances, combined with the specificity of the applicable standardized procedure and the quantity of items in the vehicle, make the officer's description of "misc. tools" insufficient to remove the inference that the search was investigatory.[1]

---

[1]The dissent concludes that Officer Gillespie's inventory description "misc. tools" was sufficient, contrasting it with the officers' description in Rowland, found to be inadequate, which included only the incriminating items found in the vehicle. 341 F.3d at 780. The question, however, is not whether Officer Gillespie's description was sufficient as compared to that in Rowland, but whether the two-word description "misc. tools" constitutes a "detailed inventory and listing of items located inside the vehicle being towed," as required by the KCPD policy at issue in this case. Undoubtedly it does not. Further, an experienced Kansas City Police Officer such as Officer Gillespie should be capable of identifying and listing commonplace items, such as flashlight, toolbox, screwdriver, chainsaw, pliers, and chain, and of photographing or soliciting assistance in identifying and listing items with which the officer is not familiar.

Even if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search. Hall, 497 F.3d at 852; see also Whren v. United States, 517 U.S. 806, 812 (1996) (noting that an officer's motive may invalidate objectively justifiable behavior in the context of an inventory search). "[S]omething else" must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle. Rowland, 341 F.3d at 780-81. Here, the "something else" is found in the officer's testimony at the suppression hearing. Officer Gillespie testified that the basis for the traffic stop, the arrest, the towing of the vehicle, and the inventory search was the officer's belief that Taylor had narcotics in his vehicle. She also testified that she would not have arrested Taylor, impounded his vehicle, or inventoried the contents of the truck if not for her belief that the vehicle contained evidence of a narcotics crime. This testimony leads us to conclude that the search was conducted because police believed they would find evidence of narcotics in Taylor's truck, and thus the inventory was merely a pretext for an investigatory search. The district court's finding to the contrary was clearly erroneous. Because Officer Gillepsie did not comply with KCPD inventory policy and because her testimony demonstrates pretext, we hold that the search cannot be upheld under the inventory search exception to the Fourth Amendment warrant requirement.

The Government argues that the inventory should be upheld because, as the district court concluded, Officer Gillespie was required to impound the vehicle under KCPD standard policy because she "believed" Taylor's vehicle had been used in the commission of a crime. The Government's argument that the inventory was valid because the impoundment was valid conflates two separate issues. The validity of an impoundment is not dispositive of the validity of an inventory search. See Marshall, 986 F.2d at 1174 (holding that even though an inventory search was invalid the vehicle was properly impounded). Moreover, we have rejected the argument that an impoundment is constitutional solely because KCPD policy allows towing based on a "belief" that a vehicle contains evidence of a crime. United States v. Sims, 424 F.3d

691, 693 (8th Cir. 2005). Finally, the Government does not argue, and the district court did not hold, that probable cause supported the search of the vehicle. Instead, the Government relies on the inventory search exception to justify the warrantless search of Taylor's vehicle, and a "police department may not avoid the constitutional requirement of probable cause simply by adopting a standard policy to impound vehicles based only on a 'belief' that the vehicle was involved in the commission of a crime and has evidentiary value." Id.

## III.

The Government has not met its burden to show that its conduct complied with the inventory search exception to the warrant requirement, and it has asserted no other exception to justify the warrantless search of Taylor's truck. Accordingly, we reverse the district court's denial of Taylor's motion to suppress and remand for further proceedings consistent with this opinion.

WOLLMAN, Circuit Judge, dissenting.

As I read the record, Taylor raised no challenge to the lawfulness of the stop and impoundment of his vehicle. As noted by the district court, "The impoundment issue is no longer challenged, in the briefing of objections, which concentrate on the inventory question." D. Ct. Order at 1.

Thus, we are left with the question whether the inventory search substantially complied with the city's inventory policy. True enough, we can say, as did the district court of the search in Colorado v. Bertine, 479 U.S. 367, 369 (1987), that the inventory of Taylor's vehicle was performed in a "somewhat slipshod manner." That said, I would hold that Officer Gillespie's "misc. tool" description was sufficient to satisfy the requirements of the inventory search exception to the warrant requirement, whether or not it would have been sufficient to shield the city from liability had

-7-

Taylor brought a claim for missing tools. "Misc. tools" may be the most bare-bones description one could settle upon, but it stands in contrast to the total lack of description of the clothing, food items, boxes, and other items that existed in United States v. Rowland, 341 F.3d 774 (8th Cir. 2003), where the court was willing to assume that a literal listing of each and every article in the vehicle was not required. I find no reason to question the truthfulness of Officer Gillespie's statement that "I'm not familiar with that much of tools" and that she did not believe that she could accurately identify each one, nor the reasonableness of that explanation. There is no evidence that she was attempting to end-run or evade the policy's requirement of a detailed inventory, a ploy that might well have constituted a career-ending decision had any of the tools turned out to be missing, or that she was acting in bad faith in conducting the inventory. See Bertine, 479 U.S. at 372.

In Rowland, it was the officers' discretionary decision to choose which items to record, coupled with their investigatory motive, that constituted the "something else" that suggested that the police had raised the after-the-fact inventory banner that we cautioned against in United States v. Marshall, 986 F.2d 1171 (8th Cir. 1993). There, we held that it was the lack of any evidence of the existence of standardized inventory procedures to guide the scope of the investigating officers, coupled with the substantial evidence of an investigatory motive on the part of the police, that rendered the search of the vehicle unreasonable. Id. at 1175. We emphasized that our holding was not to be read as disturbing our decisions that recognize that the inventory search of a lawfully impounded vehicle is not invalidated merely because the officers suspect that the vehicle's owner is involved in illegal activity. Id. at 1175-76. In rejecting the proposition that the subjective motivation of the searching officer is relevant in ruling on a Fourth Amendment claim, the Supreme Court has pointed out that

> we have held in the context of programmatic searches conducted without individualized suspicion—such as checkpoints to combat drunk driving or drug trafficking—that "an inquiry into *programmatic* purpose" is sometimes appropriate. Indianapolis v. Edmond, 531 U.S. 32, 46, 121

-8-

S.Ct. 447, 148 L.Ed.2d 333(2000) (emphasis added); see also Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (an inventory search must be regulated by "standardized criteria" or "established routine" so as not to "be a ruse for a general rummaging in order to discover incriminating evidence"). But this inquiry is directed at ensuring that the purpose behind the *program* is not "ultimately indistinguishable from the general interest in crime control." Edmond, 531 U.S. at 44, 121 S.Ct. 447. It has nothing to do with discerning what is in the mind of the individual officer conducting the search.

Brigham City, Utah v. Stuart, 547 U.S. 398, 405 (2006).

I would hold that Officer Gillespie's good faith generic description of the contents of Taylor's van dispels any suggestion that it was an after-the-fact attempt to insulate the inventory search from a constitutional challenge. Accordingly, I would affirm the order denying the motion to suppress.

_____