# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-2393

———————————————

United States of America

*Plaintiff - Appellee*

v.

Kalil Wesley Dunn

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————————

Submitted: March 15, 2019
Filed: June 25, 2019

——————————

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

Kalil Dunn appeals the district court's[1] order denying his two motions to suppress evidence, arguing that the vehicle searches that revealed the evidence had no legal basis. Dunn also appeals his 57-month sentence for being a felon in

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

possession of a firearm, arguing that the district court should have applied a downward variance. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Around 1:00 AM on April 12, 2017, Dunn fell asleep at the wheel of a moving Buick sedan on a Minneapolis, Minnesota street. The Buick ran into three parked cars before spinning to a stop in the middle of the street, sustaining heavy front-end damage and a flat tire which rendered the vehicle undriveable. Minneapolis police officers arrived on the scene and found the Buick sitting in the street, facing the wrong direction and blocking traffic. The officers observed the vehicle's condition and location and, pursuant to Minneapolis Police Department policy, chose to tow and impound it. They did so despite the fact that Dunn had already contacted a private tow truck. The officers, continuing to follow departmental policy, conducted an inventory search of the Buick before towing it. During the search, they discovered two semi-automatic pistols, two baggies containing crack cocaine, and two digital scales. Dunn was arrested and detained by local authorities, but released from local custody on April 26, 2017.

Two months later, on June 20, 2017, two Minneapolis Police Department officers in an unmarked car encountered Dunn as he was driving on a city street. Dunn sped away from the officers, who followed him and observed him make several turns at a high rate of speed without using his turn signal. The officers considered this conduct to be reckless driving, especially in an area where children were playing, and activated the vehicle's police lights to pull Dunn over. Dunn pulled over, got out of his vehicle, and began to walk away. Officer Donnell Crayton exited the police vehicle, directed Dunn to put his hands up, and escorted him to the police vehicle.

While Officer Crayton handcuffed and detained Dunn, including frisking him for weapons, Officer Kong Moua walked up to Dunn's vehicle to see if anyone else

was inside. As he looked through the driver's side window, Officer Moua saw a plastic bag that appeared to contain crack cocaine in an open compartment on the dashboard. Officer Moua then obtained the vehicle's key from Dunn and conducted an automobile search. In addition to the crack cocaine, he discovered a loaded handgun and a magazine drum with ammunition in the passenger compartment. Officer Moua removed the handgun and ammunition from the vehicle first and photographed them before returning to the vehicle and removing and photographing the crack cocaine.

Dunn was indicted on five counts arising from his two encounters with law enforcement: one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), arising from the April 12th incident; two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), with one count arising from each incident; and two counts of possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), with one count arising from each incident. He moved to suppress all evidence obtained in the searches of his vehicles.

After an evidentiary hearing, a magistrate judge recommended denial of Dunn's motions to suppress, finding that the April 12th search was a valid inventory search and that the June 20th search was justified by Officer Moua's observation of crack cocaine in plain view inside the car. The district court adopted the Report and Recommendation over Dunn's objections, stating that nothing in the law or Minneapolis Police Department policy requires officers to consult a vehicle's driver before making towing arrangements and that Officer Moua credibly testified that he saw crack cocaine in plain view before conducting the June 20th search.

Pursuant to a plea agreement, Dunn pled guilty to Count 1—being a felon in possession of a firearm—and Count 3—carrying a firearm during and in relation to a drug trafficking crime—of the indictment, reserving his right to appeal the denial

-3-

of his suppression motions. Both of these charges stemmed from the April 12th incident. The government agreed to dismiss the three remaining counts of the indictment, including both of the charges arising from the June 20th search.[2] With an offense level of 21 and a criminal history that placed him in category IV, Dunn's United States Sentencing Guidelines range for Count 1 was 57 to 71 months. His Guidelines range for Count 3 was 60 months, the mandatory minimum, to be served consecutively to his Count 1 sentence.

Dunn sought a downward variance to 36 months on Count 1, citing his difficult childhood. The district court denied the variance but imposed a sentence at the bottom of the Guidelines range—57 months on Count 1 and 60 months on Count 3. Dunn now appeals, arguing that the district court erred in denying his motions to suppress because the police had no legal basis to search his vehicles and that the district court abused its discretion at sentencing in failing to grant a downward variance based on his difficult childhood.

II.

When reviewing a district court's denial of a motion to suppress evidence, we review factual findings for clear error, giving "great deference" to the district court's credibility findings. United States v. Guide, 891 F.3d 744, 748 (8th Cir. 2018); United States v. Sanders, 424 F.3d 768, 772-73 (8th Cir. 2005). "[T]he ultimate question of whether the Fourth Amendment has been violated" is reviewed de novo. United States v. Poggemiller, 375 F.3d 686, 687 (8th Cir. 2004). We will affirm the district court's decision unless it misstates the law, is unsupported by substantial

---

[2]Although the district court dismissed all the charges stemming from the June 20th search, it applied a two-level enhancement for possessing three or more firearms based in part on the firearm discovered by Officer Moua during that search. Further, at sentencing, the district court used Dunn's possession of a loaded firearm on June 20, 2017 as an aggravating factor for sentencing purposes.

evidence, or, after reviewing the record, we are "left with the definite and firm conviction that a mistake has been made." United States v. Layne, 973 F.2d 1417, 1420 (8th Cir. 1992).

The Fourth Amendment generally prohibits warrantless searches, subject to a few narrow exceptions. United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011). "One such exception allows law enforcement to inventory the contents of a lawfully impounded vehicle without a warrant or probable cause." Id. Another exception allows officers to search a vehicle if, before searching, they "[have] probable cause to believe the vehicle contain[s] contraband or other evidence of a crime . . . ." United States v. Vore, 743 F.3d 1175, 1179 (8th Cir. 2014). Dunn contends that none of the exceptions to the warrant requirement applied to the searches of his vehicles. We examine each of the searches in turn.

A.

Dunn moved to suppress evidence gathered in the April 12th inventory search, arguing that the search was unreasonable because Minneapolis police should have waited and deferred to his private towing arrangements rather than impounding his vehicle. An inventory search is considered reasonable if it "is conducted according to standardized police procedures . . . ." Taylor, 636 F.3d at 464. Here, it is undisputed that Minneapolis Police Department policy allows officers to tow and impound a vehicle that is impeding traffic when the owner cannot immediately remove the vehicle on his own. It is also undisputed that officers must conduct an inventory search before impounding a car.

Dunn acknowledges that departmental policy does not require officers to ask vehicle owners if they wish to make private towing arrangements before the officers tow and impound a vehicle. He contends, however, that the standard policy did not apply because he informed the officers that he had already made private towing

arrangements and the officers should have deferred to those arrangements. Dunn cites no legal authority for this proposition, nor any legal authority showing that the Minneapolis Police Department's towing policy is unreasonable. Because Dunn admits that the officers followed departmental policy in impounding and inventorying his vehicle, and because an inventory search conducted according to standard departmental policies is reasonable, we find that the April 12th search of Dunn's vehicle was reasonable. See United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993). The district court properly denied Dunn's motion to suppress the evidence gathered during that search.

B.

Dunn also moved to suppress evidence gathered in the June 20th search, arguing that Officer Moua had no legal justification to search his vehicle. The district court found that the June 20th search was justified because Officer Moua observed crack cocaine in plain view inside the car before initiating the search. We agree.

"As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). This is because a vehicle's "ready mobility" creates an exigency and because individuals have a "reduced expectation of privacy in an automobile, owing to its pervasive regulation." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam). If an officer views contraband in plain sight through an automobile's window, he has probable cause to search that vehicle. Fladten, 230 F.3d at 1086.

At the hearing on Dunn's motions to suppress, Officer Moua testified that he saw a baggie of crack cocaine in a dashboard compartment through the driver's side window when he initially approached Dunn's vehicle. Dunn argues that the district court erroneously credited Officer Moua's testimony because the baggie was the last

thing the officer removed from the vehicle and, therefore, must have been the last thing he discovered in the search. However, "[a] credibility determination made by a district court after a hearing on the merits of a motion to suppress is 'virtually unassailable on appeal.'" United States v. Frencher, 503 F.3d 701, 701 (8th Cir. 2007) (quoting United States v. Guel-Contreras, 468 F.3d 517, 521 (8th Cir. 2006)).

Officer Moua indicated that he removed the firearm from the vehicle before the crack cocaine due to safety concerns, despite discovering the crack cocaine first, and the district court found this explanation adequate. The district court further determined that the record, including Officer Crayton's testimony that Officer Moua said he saw narcotics in Dunn's vehicle and discovered the firearm later, supported Officer Moua's testimony. We find no clear error in the district court's credibility determination, and we thus conclude that the district court properly denied Dunn's motion to suppress evidence gathered in the June 20th search.

III.

Dunn also challenges his sentence for being a felon in possession of a firearm as substantively unreasonable, claiming that the district court failed to properly evaluate the 18 U.S.C. § 3553(a) factors in determining his sentence. We review the substantive reasonableness of a sentence for an abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). A sentencing court abuses its discretion if it "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Watson, 480 F.3d 1175, 1177 (8th Cir. 2007).

The sentencing court has wide latitude to weigh the § 3553(a) factors and may assign some factors greater weight than others. United States v. Wilcox, 666 F.3d 1154, 1157 (8th Cir. 2012). "After all, the sentencing judge is in the best position to

find facts and judge their import under § 3553(a) in the individual case." Id. at 1157-58 (quoting United States v. Anderson, 618 F.3d 873, 883 (8th Cir. 2010)) (internal alterations and quotation marks omitted). If a sentence imposed is within the range recommended by the Sentencing Guidelines, we presume that sentence is reasonable. Rita v. United States, 551 U.S. 338, 347 (2007).

Here, the district court imposed a 57-month sentence on Count 1. Because that sentence is within the 57- to 71-month Guidelines range, we presume that it is reasonable. Dunn argues that the district court misweighed the § 3553(a) factors and abused its discretion by failing to grant him a downward variance based on his difficult childhood. The district court acknowledged that Dunn presented mitigating circumstances for it to consider, but it ultimately declined to vary downward from the Guidelines range because of Dunn's criminal history, the nature and circumstances of the offense, and the need for the sentence imposed to protect the public and deter Dunn from committing future crimes. Allotting "relatively greater weight to the nature and circumstances of the offense than to the mitigating personal characteristics of the defendant is well within the wide latitude [given] to individual district court judges in weighing relevant factors." United States v. Wisecarver, 644 F.3d 764, 774 (8th Cir. 2011) (alteration in original) (citation and internal quotation marks omitted). We therefore decline to find an abuse of discretion in the district court's decision to impose a sentence at the bottom of the Guidelines range, and we uphold that sentence as substantively reasonable.

We affirm the district court's judgment.

_____