# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2965
_____

United States of America

*Plaintiff - Appellee*

v.

Scott Joseph Nielsen

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 9, 2023
Filed: July 18, 2023
_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Scott Joseph Nielsen was charged with possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1), after law enforcement discovered 28 grams of methamphetamine following an inventory search of a vehicle Nielsen had been driving. Nielsen moved to

suppress the methamphetamine. After the district court[1] denied Nielsen's motion, Nielsen entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In the early evening of December 21, 2020, Sarpy County Sheriff's Deputy Earl Johnson was conducting routine patrol in an industrial area when he observed a man standing in a dumpster outside of a closed Sherwin-Williams flooring business. Finding this suspicious, Deputy Johnson notified Sarpy County Communications and decided to investigate further. As Deputy Johnson exited his patrol cruiser, he noticed a green Mazda pickup truck parked perpendicular to the dumpster, blocking access to it. Deputy Johnson approached the dumpster, asked the man to step out, and requested the man's identification. After exiting the dumpster, the man presented a Nebraska driver's license identifying him as Scott Joseph Nielsen. Deputy Johnson then ran Nielsen's information through Sarpy County Communications and discovered that Nielsen had an active felony-drug warrant. Deputy Johnson informed Nielsen of this discovery and asked who owned the vehicle. Nielsen told him that it belonged to a friend.

Subsequently, Deputy Johnson handcuffed Nielsen and searched his person, recovering a multi-tool flashlight and approximately $2,400 in cash. As Deputy Johnson counted the money, he called a canine handler to the scene because he "believed there was going to be illegal narcotics in the vehicle based on the arrest warrant and the large amount of cash that was found on Mr. Nielsen that was bundled in several different bundles." Deputy Johnson then placed Nielsen in his patrol cruiser.

---

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska, adopting the report and recommendations of the Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

After securing Nielsen, and while waiting for the canine handler to arrive, Deputy Johnson turned his attention to the vehicle. Deputy Johnson shined his flashlight into the windows, observing what he thought to be "burglary style tools" and other suspicious items. With other officers, Deputy Johnson then discussed the possibility of contacting the vehicle's registered owner, Jessica Moran, to pick it up. But Deputy Johnson had reservations about this given that Moran lived at an address approximately 25-30 minutes away. Eventually, Sarpy County Sherriff's Deputy Jason Jones arrived on the scene with his K-9. Deputy Jones walked the K-9 around the vehicle several times, but the dog did not alert.

At this point, Deputy Johnson heard Nielsen's cellphone ringing inside the vehicle and returned to ask Nielsen if he wanted his phone. Deputy Johnson also asked Nielsen if there were any keys he needed from his keychain because the officers were "most likely" going to tow the vehicle; however, Deputy Johnson was still considering contacting Moran. Deputy Johnson inquired as to whether Nielsen had Moran's phone number saved in his phone. Nielsen responded that he did and confirmed that he would like his phone from the vehicle. Deputy Johnson then entered the vehicle to retrieve Nielsen's phone, and, after seeing the state of the vehicle's interior, decided to tow it per Sarpy County Sheriff's Department (SCSD) policy.

Specifically, Section III.A.2. of the policy provides, in relevant part, that "[d]eputies are *required* to tow motor vehicles for the following reasons: a) [t]he driver is taken into custody." The policy also contains limited exceptions, one of which allows officers to release the vehicle "to another individual [whose] name appears on the registration . . . provided that individual is on scene or can respond to the scene." Importantly, however, this exception is at the officer's discretion. Deputy Johnson ultimately exercised his discretion in towing the vehicle without first contacting Moran.

After deciding to tow the vehicle, Deputy Johnson began an inventory search assisted by Deputy Jones. To ensure officer safety and to guard SCSD against claims

-3-

of loss, SCSD policy requires officers conducting inventory searches to search "all areas of the vehicle, including the trunk" as well as "[a]ll containers within the vehicle, open or closed . . . for valuable items." The officers must then document any valuable items on a "Tow/Impound Form" and any potential contraband on an "Evidence/Property Form."

As Deputy Johnson inventoried the passenger side of the vehicle, he found a black leather binoculars case in the passenger seat. Because Deputy Johnson thought that the case contained "an item of value," he opened it and found two plastic bags containing suspected methamphetamine. The officers then continued the inventory. Pursuant to policy, Deputy Jones catalogued all potentially valuable items on the Tow/Impound Form, for example, "1 - remote start kit in box (passenger seat), . . . 1 - ratchet straps (trunk/cargo area)," etc. Once the officers completed the inventory, an SCSD investigator arrived and documented potential contraband on the Evidence/Property Form, listing, for example, "Ziploc bag containing white crystal-suspect meth," "new box of 200 Ziploc type bags," $11,621.36 in U.S. currency, etc. Deputy Johnson then transported Nielsen to jail for booking while Deputy Jones towed the vehicle. Moran later testified that none of the officers attempted to contact her regarding the vehicle prior to towing it.

Nielsen was eventually charged with possession with intent to distribute methamphetamine. Nielsen subsequently filed a motion to suppress, alleging that: the search was not supported by probable cause; the inventory search was a pretext for an investigatory search; law enforcement lacked the authority to tow the vehicle; and Deputy Johnson exceeded the scope of any permissible inventory search when he opened the binoculars case. The government responded by arguing that the officers conducted a lawful inventory search pursuant to SCSD policy. After an evidentiary hearing, the magistrate judge issued a report and recommendation recommending the district court deny Nielsen's motion to suppress, concluding that the officers' search was reasonable under the inventory-search exception to the warrant requirement. Nielsen objected, but the district court overruled his objections and entered an order denying the motion to suppress. Nielsen entered a conditional

guilty plea, reserving his right to appeal the denial of his motion. Nielsen now appeals, arguing that (1) the officers' inventory search was a pretext for an investigatory search and (2) Deputy Johnson exceeded the scope of any lawful inventory search when he opened Nielsen's binoculars case.

## II.

In reviewing the denial of a motion to suppress, "we review the district court's factual findings for clear error and its conclusions of law de novo. We also review the district court's findings of fact regarding the circumstances of an inventory search for clear error, including the question of pretext." United States v. Taylor, 636 F.3d 461, 463-64 (8th Cir. 2011) (citations omitted).

The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. amend. IV. Searches conducted without a warrant are considered "*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Inventory searches are one such exception. United States v. Morris, 915 F.3d 552, 556 (8th Cir. 2019). The purposes of an inventory search, after all, are "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Colorado v. Bertine, 479 U.S. 367, 372 (1987). In this capacity, officers are not investigating a crime, but rather, are "performing an administrative or caretaking function." United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993) (citing South Dakota v. Opperman, 428 U.S. 364, 369 n.5 (1976)). Of course, an inventory search must still "be reasonable under the totality of the circumstances and may not be 'a ruse for a general rummaging in order to discover incriminating evidence.'" Taylor, 636 F.3d at 464 (citations omitted).

Nonetheless, "[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." United States v. Harris, 795 F.3d

820, 822 (8th Cir. 2015) (citation omitted). As we have repeatedly stated, officers "may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their *sole purpose* is not to investigate a crime." United States v. Petty, 367 F.3d 1009, 1013 (8th Cir. 2004) (emphasis added) (citation omitted); see also United States v. Agofsky, 20 F.3d 866, 873 (8th Cir. 1994) ("The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search."). "'[S]omething else' must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle." Taylor, 636 F.3d at 465 (alteration in original) (citation omitted); see also United States v. Rowland, 341 F.3d 774, 779-82 (8th Cir. 2003) (concluding that inventory search was unreasonable when officers failed to follow standardized procedures, searched for and recorded only incriminating evidence, and testified that the search was partly conducted to investigate possible crimes).

When officers conduct an inventory search according to standardized police procedures, the reasonableness requirement is generally met. See Morris, 915 F.3d at 557. This is true even when officers are afforded discretion to release a vehicle to a registered, insured driver instead of towing it, provided this discretion "is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Bertine, 479 U.S. at 375; see also Petty, 367 F.3d at 1012 ("The requirement that discretion be fettered, however, has never meant that a decision to impound or inventory must be made in a 'totally mechanical' fashion." (quoting Florida v. Wells, 495 U.S. 1, 4 (1990))).

Even if we assume that Deputy Johnson had an investigatory motive, we still hold that the inventory search was reasonable. Indeed, after Deputy Johnson arrested Nielsen on an active felony-drug warrant, SCSD policy *required* Deputy Johnson to have Nielsen's vehicle towed. Although the policy provided a limited exception in which Deputy Johnson could have allowed Moran to pick up the vehicle, Deputy Johnson reasonably exercised his discretion in refusing to do so given that he knew Moran lived approximately 25-30 minutes away. See Agofsky, 20 F.3d at 873

(finding that officer justifiably "concluded he could not wait forty-five minutes for someone to come from [neighboring town], and accordingly impounded the car"). After all, "[n]othing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." Id. (citing Bertine, 479 U.S. at 372). Moreover, in conducting the actual inventory search of Nielsen's vehicle, the officers followed SCSD policies exactly. Indeed, unlike in Rowland, where the officers only listed items that they considered potential evidence, Deputy Jones catalogued all potentially valuable items on the Tow/Impound Form to guard SCSD from any claims of loss, theft, etc. 341 F.3d at 782.

Finally, Nielsen contends that even if the search is considered an inventory search, Deputy Johnson exceeded its permissible scope when he opened Nielsen's binoculars case. We find this contention meritless. SCSD's inventory-search policy requires officers to open all containers within the vehicle, whether open or closed, to inventory them for valuable items. Deputy Johnson followed this policy in opening the binoculars case to determine whether there were any items of value inside. Such a policy is "unquestionably permissible," Wells, 495 U.S. at 4, and we therefore refuse to invalidate the inventory search on this basis. Cf. Morris, 915 F.3d at 556-57 (concluding that officers reasonably opened sunglasses case during inventory search, thereby discovering contraband, when department policy required inventory of the entire vehicle for items valued at $25 or more, and sunglasses case could have contained such items).

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____